DEUTSCH v. DUNHAM.

Opinion delivered January 16, 1904.

1. SALE—EXECUTORY CONTRACT.—A contract for the sale of uncut timber, to be sawed according to the purchaser's orders, and piled at a certain siding, to be inspected green and paid for once a month at prices agreed upon and fixed according to grade, is merely executory, and title does not pass until the inspection is made. (Page 144.)

2. SAME—REMEDY FOR BREACH.—Where there was no delivery of lumber under an executory contract of sale, and the sellers refused to abide by the buyer's inspection, the making of which was a condition precedent to the passing of title, the buyer could not maintain replevin for the lumber, his remedy, if any, being an action on the breach of contract for damages. (Page 145.)

Appeal from Lee Circuit Court.

HANCE N. HUTTON, Judge.

Affirmed.

*McCulloch & McCulloch,* for appellant.

The sale was complete, and the title passed, when the lumber was delivered and appellant had offered to inspect and pay for

same. Generally speaking, the time of transfer of title is depend-
ent upon the intention of the parties. Tied. Sales, § 84; 111 Mass.
10; 1 Mechem, Sales, § 511. But where the goods are such as
the buyer is bound by his contract to accept, and nothing remains
after delivery but to ascertain the price, the title passes at once
on delivery. 1 Mechem, Sales, § § 512, 519; 39 Ill. 31; *Ib.* 195;
65 *Id.* 322; 2 Duv. (Ky.) 87; 37 N. H. 428. The court erred
in instructing the jury that inspection was essential to pass title
to the lumber, because the measurement was to be done merely
to determine the amount to be paid. 39 Ark. 71; 37 Ark. 483;
100 U. S. 135; 71 N. Y. 291; 2 N. Y. 258; 58 Ill. 373; 43 S. W.
223; *Ib.* 222; 49 S. W. 14; 29 Tex. 204; 13 Pick. 182; 20 Id.
283; 20 Mo. 560; 69 Md. 537; 56 S. W. 506; 104 Ala. 236; 81
Ind. 512; 29 Wis. 537; 58 Pa. St. 103.

*H. F. Roleson* and *N. W. Norton,* for appellees.

Title does not pass so long as anything remains to be done.
25 Ark. 547; 1 Pars. Cont. 527; Benj. Sales, § § 869, 870; 21 Am.
& Eng. Enc. Law, 612; 26 Ark. 394; 5 Ark. 164; 67 Ark. 135; 17
N. W. 136; Baker, Sales, § 299. The question is not whether a
party ought to accept, but whether he really has accepted. 25
Ark. 347. Appellants, by their refusal to accept the inspection and
pile and deliver the lumber, repudiated the contract, and the title
did not pass. 176 Pa. St. 291; 41 N. W. 27; 22 Wall. 280. The
title did not pass as long as something remained to be done. 100
U. S. 124; 25 Pac. 360; 25 Pa. 989.

BATTLE, J. Albert Deutsch commenced an action of replevin
against Dunham & Nelson to recover the possession of certain
oak and gum lumber described in his complaint. The defend-
ants denied that he was the owner or entitled to the possession
of the lumber. The issues were tried by a jury, and a verdict
was rendered for the defendants, and the plaintiff appealed.

The oak lumber was claimed by appellant under a written
contract between him and appellees, dated March 27, 1899, which
is as follows:

"This is to witness a contract this day entered into by and
between Albert Deutsch, party of the first part, and J. P. Dunham
and D. L. Nelson, parties of the second part, in consideration of

six hundred dollars in cash paid to them by said A. Deutsch, the receipt of which is evidenced by a note for like amount, secured by a mortgage on the mill bought by said Dunham & Nelson and known as the Nash Mill, and other considerations hereinafter named, do sell to said A. Deutsch all the output and cut of red oak, white oak and ash lumber sawed by their said mill on the Choctaw & Memphis Railroad in St. Francis county, Arkansas, and in case of change of ownership of the mill this contract shall remain binding on the purchaser. The said lumber to be sawed by said Dunham & Nelson according to the orders of said A. Deutsch, to be piled at the siding of the Choctaw & Memphis Railroad in a good and workmanlike manner and properly crossed, using proper foundations and dry piling strips, giving plenty of ventilation and loaded on cars according to the wishes of said A. Deutsch whenever desired by him. Following are the prices agreed on between the parties of the first and second parts, towit: [Here follows list of prices for different kind and grades of lumber.] The plain white oak and ash to be sawed as much as possible 2½ inches and over thick as possible without disadvantage, and it shall be optional with party of the second part whether the culls shall be included or not, the lumber to be inspected green and paid for once a month less the usual two per cent. for cash."

The prices agreed upon in the written contract were to be paid for sixteen different kinds and grades of lumber. The $600 were loaned by appellant to appellees to purchase the mill mentioned in the contract, and have been returned to him.

Evidence tending to prove substantially the following facts was adduced: Two men were sent by appellant, at different times, to appellees' mill to examine lumber sawed by them. George Lorraine was first sent to examine gum lumber. The lumber was not piled. He estimated the amount, and refused to include in his estimate certain "culls." Appellees objected, and refused to accept his inspection, and declined to deliver the lumber to appellant. Albert Lorraine was the other man. The lumber examined by him was not in piles, but in stocks. He estimated the quality of lumber sawed. He says that there was no way to determine from his estimate the value of the lumber. Appellees objected to his examination of the lumber, and refused to accept it.

and to deliver the lumber to appellant, but sold it to other persons. The parties failed to agree upon inspection, and no satisfactory inspection was made. Appellant offered to send other inspectors, but all his offers were declined. He agreed that appellees might sell the gum lumber to other persons, and they did so.

His contention is stated in his brief as follows: "That as soon as the lumber was sawed and delivered at the place of delivery stipulated in the contract, and appellant had offered to inspect and pay for same, the sale was complete, and the contract was no longer executory, but executed, and that the title had passed to appellant, so that he could sue for possession." Is this contention correct in this case?

The contract upon which appellant bases his claim to the lumber in controversy was executory. At the time it was entered into, the lumber was not in existence. It was thereafter to be sawed by appellees, according to the orders of appellant, and to be well piled at the siding of the Choctaw & Memphis Railroad in a good and workmanlike manner. The prices to be paid were agreed upon and fixed according to grade of lumber. It was "to be inspected green and paid for once a month, less the usual two per cent. for cash."

The contract being executory, it is clear that appellant could not be compelled to accept the lumber until he had an opportunity to inspect it in order to ascertain whether it was such as appellees stipulated to saw. 2 Mechem, Sales, § § 1210, 1211, 1375, and cases cited. It is equally clear that the inspection was necessary in this case to ascertain the grades of the lumber, in order to determine the amount to be paid according to the stipulated prices. Both parties were interested in, and protected by, the stipulation that an inspection should be made. Hence it was required, and, on account of the purposes for which it was evidently to be made, became a condition to be performed before the title to the lumber vested in appellant, and a complete sale to him was made. For it is not reasonable to suppose that the appellant intended to bind himself to receive and pay for all the lumber that appellees might manufacture. It was stipulated in the contract that the lumber he agreed to purchase should be sawed according to his orders. And it is not reasonable to presume that appellees intended to deliver the lumber before it was graded according to the prices agreed

upon and the amount to be paid therefor should be ascertained and fixed, and thereby subject themselves to the risk of loss, disagreements, and litigation that might follow.

There was no delivery of the lumber to appellant, actual or constructive. The transfer of the title to the property depended upon the intention of the parties. There was evidence adduced tending to prove that the title to the lumber should vest in appellant, and that it was not appropriated to the contract. Appellees refused to abide or accept the inspection of appellant's employees. Under all these circumstances, appellant was not entitled to maintain his action of replevin. His remedy, if any, was an action on the breach of contract for damages.

Affirmed.