## Dunham v. H. D. Williams Cooperage Company.

### Opinion delivered June 10, 1907.

1. Appeal—judgment by consent.—An agreement by the parties to an action of replevin, where the property had been sold by defendant to a third party, that an amount conceded to be due by plaintiff to defendant might be deducted from any alternative judgment recovered against defendant will not preclude defendant from appealing from an adverse judgment against him. (Page 400.)

2. Sale of chattel—when executory.—Under a contract which recites the sale of certain articles but provides that plaintiff shall furnish to defendant the machinery to manufacture the articles, and that the articles are to be shipped to and be inspected and accepted by plaintiff, the title to the articles does not pass until they have been inspected and accepted by plaintiff. (Page 400.)

3. Instruction—relevance to issues.—The court properly refused to submit to the jury an issue not raised by the pleadings. (Page 402.)

Appeal from Hot Springs Circuit Court; *Alexander M. Duffie,* Judge; reversed.

#### STATEMENT BY THE COURT.

In January, 1905, Howard Dunham of Texarkana, Arkansas, entered into a writen contract with the W. H. Williams Cooperage Company of Poplar Bluff, Missouri, by which Dunham agreed to sell the Cooperage Company white oak heading at the prices named in the contract. The portions of the contract material to be set out are as follows:.

"The party of the first part has this day sold to the party of the second part, and the party of the second part has purchased from the party of the first part, 500,000 pieces of white oak heading, said heading to be sawed 22 in. long, full ⅞ of an inch in thickness, and to be taken on a basis of 7 inches per piece, allowance being made for kiln drying and jointing.

"Inspection: All heading under this contract to be known as mill run, culls eliminated, and no piece will be accepted under this contract that does not measure full four inches wide after allowance being made for jointing and drying, and not more than 1½ inches of sap to be measured.

"Price at which this heading to be delivered f. o. b. cars at Witherspoon, Arkansas (on the Iron Mountain R. R.), $22 per 1,000 on basis of 7 inch average per peice as above provided. Party of the second part to make inspection immediately after said heading is received by it at Poplar Bluff, Mo., and its inspection and measurement and count to be final for all purposes of this contract."

There was also a further stipulation that the Cooperage Company should loan Dunham a boiler, engine, saw and other things necessary for the heading mill, which mill Dunham was to use only for the purpose of sawing the heading named in the contract.

Afterwards on January, 16, the Cooperage Company furnished Dunham $269.40 to pay for making and hauling bolts. On the 3d day of February, 1905, the company paid Dunham $705.80 for the same purpose. On the 7th of March, 1905, they paid him the further sum of $343.74.

For the amount paid in February the company simply took from Dunham a receipt stating that the money was received by him from the company "to pay for making and hauling to the mill yard, two miles from Witherspoon, 129.69 cords 22 inch heading bolts, 33.75 cords 32 inch heading bolts, same to be sawed into heading for the said H. D. Williams Cooperage Co. [Signed] Howard Dunham."

For the payments made in January and March they took from him bills of sale. The following is the one taken in March, the one in January being in the same form:

"No. 12714. H. D. Williams Cooperage Company to Howard Dunham, Dr.

"Address Arkadelphia, Ark., 1905.

"Payment for making and hauling following bolts now at mill-yard known as Witherspoon, 2½ miles from Witherspoon, Arkansas.

"Making  32 inch heading bolts,   .80 cords at   $2.50
"     "      22   "      "      "    71.99   "       181.95
"Hauling 32   "      "      "    .80    "        86.79
"     "      22   "      "      "    71.99   "ᴬ
"J. L. Price, foreman, 1 mo. salary                75.00

                    "Total          $343.74

"Above to cover all claims for labor and timber. Said above described property is hereby transferred and sold to H. D. Williams Cooperage Co.

"Approved Guy Bailey, Cashier; approved R. D. Foley, Sec.

"Poplar Bluff, Mo., March 7, 1905.

$343.74.  Pay to the order of Howard Dunham three hundred forty-three dollars, seventy-four cents, in full settlement of the above audited voucher.

"W. R. Foley, Treas.

"To the State National Bank of St. Louis, Mo."

Indorsed on back, "Howard Dunham."

Dunham made and shipped to the Cooperage Company several car loads of heading; but, becoming dissatisfied with the inspection made by the company and at the number of pieces of heading rejected by the company, he refused to ship any more heading unless the company would consent to have the heading inspected before shipment. The company claimed that it had bought the bolts from which the heading was made, and that it owned the heading. It thereupon brought this action of replevin to recover the heading that was then held by Dunham at his mill yard near Witherspoon. Defendant gave bond and retained the possession of the heading.

On the trial the court instructed the jury that under the original contract the ownership of the heading did not pass from Dunham to plaintiff until it had been inspected by the company and accepted at Poplar Bluff, and that they should find for defendant, "unless you further find from the evidence in the case that the defendant, when he signed and indorsed the instruments of writing, dated Jan. 16th, Mar. 7th, and Feb. 3d, 1905, intended to sell and convey to plaintiff the title to the property mentioned and described therein; if he intended to convey the title in the property to plaintiff, then your verdict should be for plaintiff, but if he merely intended to sign and indorse said instruments to secure plaintiff in whatever money was received by defendant, and that no title should pass until such property was shipped and inspected in Poplar Bluff, then you should find for the defendant."

He refused to give the following instructions numbered 7 and 8 asked by defendant:

"7. If you find from the evidence that the plaintiff advanced the defendant money to pay for making and hauling bolts, and that, to secure the same, it took a bill of sale from the defendant for certain bolts, then the bill of sale is in law a mortgage. And if you find that the defendant has shipped the plaintiff heading enough, according to a fair and honest inspection, to pay the amount so advanced, then your verdict should be for the defendant.

"8. If you find from the evidence that plaintiff advanced to the defendant money to pay for making and hauling bolts, and to secure the same took a bill of sale from the defendant covering certain bolts, then the bill of sale is in law a mortgage. And if you find from the evidence that the defendant has shipped to the plaintiff all of the bolts in the form of heading so included in said bills of sale, then your verdict should be for the defendant."

The jury returned a verdict in favor of the plaintiff. Judgment was rendered accordingly, and Dunham appealed.

*McMillan & McMillan,* for appellants.

1. Under the original written contract, plaintiff could not maintain replevin for the heading. His remedy, if any, was an action on the breach of contract for damages. 72 Ark. 141.

2.   The court erred in excluding testimony offered by defendant to show the difference between inspection made by plaintiff of the six cars and that made by defendant of the same cars before shipment, which testimony was relevant and material because (1) no title was to pass until after inspection, etc., by plaintiff at Poplar Bluff, and (2) if plaintiff was practicing fraud in this respect, it would have given defendant the right to rescind the contract and to refuse to ship more heading.  68 Ark. 187.

3.   Where a bill of sale, absolute upon its face, is intended by the parties as a security for money advanced, no matter what language is employed in expressing the terms of the contract, it will be held and treated as a mortgage.   13 Ark. 112. The bills of sale in this case are in law mortgages.

4.   The bills of sale did not make completed sales, or, if they did, it was only of the bolts therein sold.   The original contract was executory, and under it no title passed nor was to pass until the heading was received, inspected etc., at Poplar Bluff.   The voucher of February 3d was but a receipt on the part of defendant for money, and transferred no title to any heading or bolts; and when he delivered to plaintiff all the heading made from the bolts described in the bills of sale and in quantity sufficient at the contract price to pay for the advances made, plaintiff had no title or right of possession to the heading remaining in defendant's possession.   25 Ark. 553; 5 Ark. 161; 53 Am. Dec. 241; 14 Am. Dec. 373.

5.   The court erred in refusing the seventh and eighth instructions requested by defendant, and in modifying the second whereby the jury were misled.

*Gaughan & Sifford, Hardage & Wilson* and *John H. Crawford,* for appellee.

1.   The agreement appearing in the record of the judgment makes it in effect a judgment by consent, and from such a judgment no appeal will lie.   32 Ark. 74; 73 Cal. 297; 109 Cal. 395; 31 N. W. 907; 56 N. W. 1028; 60 N. W. 353; 32 N. E. 722; 8 N. W. 721; 4 Atl. 770; 10 S. E. 829.

2.   The evidence discloses such a state of facts as constitutes a delivery, actual or symbolical.   68 Ark. 307; 62 Ark. 592; 31 Ark. 163; *Id.* 131; 35 Ark. 190; 37 Am. Rep. 22; 31 Ark.

155; 60 Ark. 613; 14 Ark. 345; 23 Ark. 245; 35 Ark. 304.

*McMillan & McMillan,* for appellant in reply.

The agreement in the record is in effect nothing more than a payment on a judgment, and no right of appeal is thereby waived or lost.  45 Am. St. Rep. 272, note; 1 Am. St. Rep. 891; *Id.* 217; 56 Am. Dec. 493; 74 Ark. 202; 24 Ark. 14.

RIDDICK, J., (after stating the facts.)  This is an appeal by Howard Dunham from a judgment rendered by the circuit court of Hot Spring County against him and in favor of the H. D. Williams Cooperage Company for the possession of 53,690 pieces of white oak heading, and for damages for the detention thereof.

At the time this judgment was rendered the heading had already been sold by Dunham to another party, and there was an alternative judgment against him that if the heading was not delivered to plaintiff it should recover in lieu of those the sum of $1,758.54, that being the value of the heading as assessed by the jury.  But, as the plaintiff still owed the defendant a considerable sum for making this heading, the parties agreed that this amount should be credited to defendant and deducted from the value of the staves as assessed by the jury, so that plaintiff should have judgment and execution only for the remainder.  The plaintiff now contends that this agreement between the parties made the judgment a consent judgment, and that no appeal will lie from such a judgment.  If the judgment appealed from had been entered by consent, this argument would be sound; but there was no consent to the judgment for the heading or in default of a recovery thereof for its value.  The agreement was simply that defendant should have a credit on the assessed valuation of the staves for the amount due him from the plaintiff for making the staves.  Defendant cannot question that part of the judgment, but he is not estopped by this agreement from appealing from the judgment against him for the recovery of the heading, for it was not an agreement that plaintiff should have judgment against him either for the heading or their value, but in effect only an agreement as to the value of the staves or the value of the interest therein that had been adjudged to plaintiffs.

Under the original contract the defendant undertook to make heading and to sell and deliver it to plaintiff at a certain price.

The contract, it is true, recites that Dunham had sold, and the Cooperage Company had bought from him, 500,000 pieces of white oak heading, but the subsequent provisions of the contract show that this heading had not then been manufactured, for the contract stipulates that the Cooperage Company was to furnish the defendant mill and machinery for the purpose of making the heading. It further provided that the heading was to be shipped to Poplar Bluff, Missouri, and there inspected by the company, and that no piece would be accepted that did not conform to the measurements specified in the contract. When the whole of this contract is taken together, it is clear that it is only a contract on the part of Dunham to make and deliver to the Cooperage Company a certain number of pieces of heading at prices named in the contract, and that under this contract the title to the heading did not pass until it had been inspected and accepted by the company. *Deutsch* v. *Dunham,* 72 Ark. 141.

But in this action counsel for the company bases it right to recover on the two bills of sale executed by Dunham in January and March, 1905, and conveying to the company a certain number of heading bolts from which the company claims that the heading replevied by it was made. The defendant contends that these bills of sale were not intended as actual sales of the bolts described therein, but he says they were executed simply as security for the money advanced by the company to him at that time, and that subsequently this money was repaid by the shipment of heading to plaintiff. He also claims that after these bills of sale were executed the bolts covered by them were manufactured into heading and the heading shipped to the plaintiff. If either of these theories was true, plaintiff can not recover. That is to say, if the bills of sale were intended, not as absolute sales, but only as security to cover advances made by the plaintiff to defendant, and if defendant subsequently delivered to plaintiff heading the contract value of which was sufficient to cover all of the advances made by plaintiff, then the title to the remaining heading revested in defendant, and plaintiff cannot recover. Nor can plaintiff recover if the bolts covered by the two bills of sale were subsequently manufactured into heading, and all the heading made therefrom was delivered to plaintiff, for that would show that the heading it replevied was not

manufactured from the bolts transferred by the bills of sale.

There was some evidence to support these contentions of defendant, and counsel for defendant contends that the court erred in refusing to give instructions seven and eight asked by defendant. But the seventh instruction was properly refused because it submitted to the jury to say whether the inspection of the heading made by the company at Poplar Bluff was a fair and honest inspection or not, when the answer of the defendant does not allege that there was any fraud or unfairness in that inspection. The contract provided that the heading would be inspected by the Cooperage Company, and that its inspection and count should be final for all purposes. This, of course, did not prevent the defendant from alleging and showing that there was fraud in the inspection or such gross mistakes as would raise the inference of fraud. *Hot Springs Ry. Co.* v. *Maher,* 48 Ark. 522; *Ozan Lumber Co.* v. *Haynes,* 68 Ark. 187. But there should have been some allegation of fraud in the pleading, so as to put the plaintiff on notice that its inspection would be attacked on that ground. In this case the answer of the defendant simply denies that plaintiff is the owner of the heading or entitled to the possession of the same. We are therefore of the opinion that the court properly refused to submit to the jury the question of whether the inspection made by plaintiff was fair and honest, and that for the same reason it did not err in refusing to hear evidence tending to show that the inspection of the plaintiff was erroneous or fraudulent.

The 8th instruction asked by defendant, we think, was a proper instruction. The trial court refused to give this instruction, no doubt, for the reason that the court supposed that it was covered by the 2d instruction asked by defendant and the modification thereto made by the court. But the modification made by the court to the 2d instruction was, we think, misleading in that it submits to the jury whether the defendant by his receipt of Feb. 3d, 1905, intended to convey to the plaintiff the title to the bolts therein described. Now, this receipt does not purport to be a sale or transfer of the title to the bolts therein described. It is simply a receipt for money, stating that it is to be used to haul bolts which were to be sawed into heading for the Cooperage Company. The bolts at that time belonged to

Dunham, and we see nothing in the evidence that would justify a finding that he sold and delivered the bolts described in that receipt to plaintiff.   He contracted that he would sell and deliver the heading made from the bolts, but that did not pass the title either to the bolts or heading.   Defendant was using the mill and the money of the plaintiff to manufacture heading from bolts which he owned under promise that he would sell and deliver the heading to plaintiff.   If he failed to carry out the contract, the remedy of plaintiff was by a suit for breach of the contract.

For the reasons stated, we think the court erred in refusing the 8th instruction asked by the defendant and in the modification to the 2d instruction which the court gave.   The error of the court in this matter was probably due to oversight in not noticing the difference between the language of the receipt of Feb. 3 and those of Jan. and March, 1905.   The first is simply a receipt, while the two last are not only receipts for money but bills of sale of bolts also.

But this error may have been very prejudicial to the defendant; for, if the jury had been told that the receipt of Feb. 3 did not transfer the title to the bolts described therein, it is at least doubtful whether the verdict would have been in favor of the plaintiff for the heading replevied by it.

Judgment reversed and cause remanded for a new trial.