## COLLIN COUNTY NATIONAL BANK v. HARRIS.

### Opinion delivered May 17, 1909.

1.  SALE OF CHATTELS—WHEN EXECUTORY.—A contract for the sale of two carloads of hay, without specifying or identifying the carload intended, is executory, and title remains in the seller until some particular carload is appropriated to the performance of the contract and delivered in completion of the sale.   (Page 442.)

2.  SAME—EFFECT OF ASSIGNMENT OF BILL OF LADING.—Where a shipper of a carload of hay consigned to himself draws a draft on the vendee and assigns the bill of lading attached to the draft to a bank, the title to the hay passed to the bank as collateral security until payment of the draft.   (Page 442.)

3.  ESTOPPEL—INCONSISTENT POSITIONS.—Where plaintiffs attached a carload of hay as belonging to defendants, they will be estopped to claim that the title to the hay had passed to them by virtue of a prior sale. (Page 443.)

4.  TRIAL—WHEN ERROR TO SUBMIT MATTERS TO JURY.—It is error to submit to the jury the determination of questions about which there is no dispute.   (Page 443.)

Appeal from Drew Circuit Court; *Henry W. Wells,* Judge; reversed.

*Patrick Henry,* for appellant.

1. *Jus disponendi* was reserved in the consignor who had the legal right to transfer the bill of lading. There was never a delivery, either actual or symbolic, to appellees, and they never acquired title. Kirby's Dig. § 529; 6 Cyc. 424; 82 Tex. 195; 4 Am. & Eng. Enc. of L. 2d Ed. 546; 50 Ark. 20; 56 Ark. 98; 64 Ark. 244.

2.   In the face of the evidence that Browne Grain Company sold the draft, with the bill of lading indorsed and attached, to appellant for the face of the draft less the customary discount, it was error to instruct the jury that if appellant placed the draft to the credit of defendant in its customary way of dealing with, and making collections for, customers, and intended, if the draft was not paid, to charge the amount back to Browne Grain Company, then the Grain Company was the true owner of the oats and bill of lading.   16 W. 740; 27 Am. & Eng. Enc. of L. 862; 33 S. W. 681; 6 L. R. A. (N. S.) 887.

3.   There is no proof of fraud, and the court erred in submitting that question to the jury.

*Williamson & Williamson,* for appellee.

1.   There was evidence of a complete bargain and sale of the particular car of oats involved, and that the bank had knowledge thereof.   The Grain Company therefore had no legal right to sell to Wilson & Company.

2.   The mere crediting of paper on account of depositor does not transfer title.   5 Cyc. 498; 51 Cal. 64; 75 Minn. 186; 32 N. J. Eq. 467; 50 Fed. 647.

3.   The question of fraud was submitted under proper instruction based upon the evidence.   The jury's verdict is conclusive.   51 Ark. 324.

McCULLOCH, C. J.   This is an action instituted in the circuit court of Drew County on July 17, 1908, by appellees, Harris & Jaggers, against the Browne Grain Company, a partnership composed of C. P. Browne and E. P. Browne, residents of the State of Texas.   The cause of action is based on several items of an account for the damages alleged to have accrued to appellees, growing out of contracts of sale of oats in carload lots by the Browne Grain Company to them, and the claim is for $448.15. At the commencement of the action, funds in a bank at Monticello, Ark., alleged to belong to the Browne Grain Company were attached; but since the trial of the case below these funds were paid over to appellant, and that feature of the case passed out.

On August 13, 1908, appellees caused another order of general attachment against the property of the Browne Grain Company to be issued and levied on a carload of oats in the pos-

session of the railway company at Monticello, Ark. The defendants, Browne Grain Company, failed to appear in the action, though having been constructively summoned; but appellant, which is a national bank domiciled and doing business at McKinney, Texas, appeared and filed its interplea, asserting title to the attached property. The appellees answered the interplea, and on trial below a verdict was rendered against the intervener, and it appealed to this court.

As the Browne Grain Company failed to appear and make defense, all question as to the original cause of action set forth in the complaint of appellees has passed out of the case, and the sole question remains as to the title and right of possession of the carload of oats which was attached. The facts concerning the attached property are as follows:

On July 7, 1908, the Browne Grain Company entered into a written executory contract with appellees to sell and deliver to them two carloads of oats at a stipulated price. On the same day the Grain Company caused to be shipped from Belleview, Texas, the carload of oats in controversy, and the same was billed to the shipper's order. The car arrived at Monticello on July 20, but was not received by the appellees, a controversy having arisen between the parties concerning the inspection of the oats, and later concerning a charge made by the railroad company for demurrage on account of delay in unloading. On August 12, 1908, the Grain Company entered into a contract with H. M. Wilson of Monticello for the sale of this car, and on the same day drew a draft on Wilson for the agreed price, which was delivered to appellant bank at McKinney, Texas, with bill of lading, indorsed in blank, attached. The bank placed to the credit of the Grain Company on its books the amount of the draft, less a small discount, and the amount was immediately checked out by the Grain Company. One of the partners composing the Grain Company, and also the cashier of the appellant bank, testified that the draft with bill of lading attached was delivered to the bank as an actual cash sale for the full amount thereof, less discount, and this is the only testimony on that subject. The day following the delivery of the draft to appellant bank, the car of oats in this action was attached at Monticello.

The court, over the objection of appellant, gave the follow-

ing instruction: "If the jury believe from the evidence that the Browne Grain Company had contracted and sold the car of oats attached in this action to Harris & Jaggers prior to the sale to H. M. Wilson & Company and prior to the transfer of the draft and bill of lading to the Collin County National Bank, and that Harris & Jaggers were at all times willing to receive and pay for said oats at contract price, and that Browne Grain Company failed and refused to carry out their contract of sale by delivery to Harris & Jaggers without any fault, on the part of Harris & Jaggers, the Browne Grain Company had no right to sell the oats to H. M. Wilson & Company, and their draft on H. M. Wilson & Company was a nullity, and the transfer of the bill of lading to Collin County National Bank was a nullity as to the rights of Harris & Jaggers, provided the intervener knew of the sale to Harris & Jaggers, before the indorsement of the bill of lading to them."

This instruction was erroneous, and should not have been given. The contract of sale between the Grain Company and appellees was executory, and title had not passed. There had been no delivery of the oats, and the contract was for the sale of no particular carload of oats. The particular subject-matter of the sale was not specified and identified, and the contract therefore, up to the time of delivery, was purely executory. *Deutsch* v. *Dunham,* 72 Ark. 141; *Hatch* v. *Oil Co.,* 100 U. S. 124; *Rail* v. *Little Falls Lumber Co.,* 47 Minn. 422.

The title to the specific property remained in the Grain Company until appropriated to the performance to the contract and delivered in completion of the sale. The assignment of the bill of lading attached to the draft passed the title as collateral security to the bank, where the title remained until the payment of the draft and delivery of the bill of lading. *Turner* v. *Israel,* 64 Ark. 244; *Leonhardt* v. *Small (Tenn.),* 96 S. W. 1051.

It is urged by counsel for appellee that after the arrival of the car at Monticello, and before the draft on Wilson was drawn and delivered to the bank, an agreement was reached by correspondence between the Grain Company and appellees for the delivery and acceptance of this particular car in satisfaction of the contract. They urge that this was an identification of the car, and an appropriation of it to the satisfaction of the contract, and

that the title passed thereby without an actual delivery.  It does not appear, however, from the correspondence that the minds of the parties ever met upon terms whereby this particular carload of oats should be delivered.  There were still unsettled differences between them which prevented a delivery and caused the subsequent contract of sale between the Grain Company and Wilson.

Moreover, the attitude of appellees as attaching creditors in this case is inconsistent with their present claim that the title to the carload of oats had already passed to them from the Grain Company at the time of the contract of sale made to Wilson and the delivery of the draft with bill of lading attached, to the bank. They attached the carload of oats as the property of the Grain Company, and attempted to subject it to the payment of their claim of damages against the latter.  We are therefore convinced that the instruction quoted above was erroneous, and for this reason the judgment must be reversed.

We are further of the opinion that the court erred in submitting to the jury the question whether or not the title to the property passed to the bank by the delivery of the draft with bill of lading attached, and also in submitting the question whether or not this was done for the purpose of aiding the Grain Company in defrauding creditors.  The evidence as to the transactions between the Grain Company and appellant bank is undisputed.  At the time of the delivery of the draft and bill of lading, the title to the property remained in the Grain Company; and according to the uncontradicted evidence the draft was delivered to the bank as an absolute sale, and the proceeds thereof were immediately checked out by the Grain Company.  There is no evidence whatever of any fraud or collusion between the appellant bank and the Grain Company, nor of insolvency or inability on the part of the latter to meet its obligations.  There is nothing in the evidence to indicate or to warrant a conclusion otherwise than that this was a transaction in the ordinary course of business whereby products of this kind are sold and the sales thereof consummated.  Under the evidence in this case, the court should have directed a verdict in favor of the intervener.

Reversed and remanded for new trial.