ELGIN *v.* BARKER.

Opinion delivered February 3, 1913.

1.  SALE OF CHATTEL—WHEN TITLE PASSES.—In a sale of personal property title passes when the parties intend that it shall pass, even though actual possession of the thing sold does not pass from the seller to the buyer at the time the sale is made, nor the purchase price paid. (Page 487.)

2.  VERBAL CONTRACT OF SALE—QUESTION FOR JURY.—Where a contract of sale of personal property is verbal, and the testimony concerning it is conflicting, it is for the jury to determine whether the sale was made and the terms thereof. (Page 487.)

Appeal from Hot Spring Circuit Court; *W. H. Evans,* Judge; affirmed.

STATEMENT BY THE COURT.

This suit was brought by appellee against appellant in replevin for one gray mare, which appellee alleged he purchased of appellant, giving him as a consideration therefor one note for $58.50, which had been executed by appellant to appellee, and also an account of appellant to appellee, the note, interest and account amounting in the aggregate to about $70.00. The appellant denied that he had sold the mare for the consideration of the note and account, but averred that the consideration was $80.00, and that the contract was that upon the surrender of the note and account and the payment of the difference by appellee to him (appellant) he (appellant) agreed to let appellee have the mare. He denied that the mare was ever delivered to appellee; denied that there was a completed sale, and denied that appellee was entitled to the possession of the mare.

The evidence tended to show on behalf of the appellee that he once owned the mare in controversy and that he sold her to appellant for $40.00. Appellant, at the time of the alleged sale in controversy, was indebted to appellee in the sum of $58.50 on a note and account for $5.85, which, in the aggregate, amounted to about $64.35. Appellee went to the house of appellant and offered him the note and account for the mare in controversy, which he testifies appellant accepted; that they then went down to the lot where the mare was in the stable; that appellant opened the stable door, and appellee went in and patted the mare on the rump; that appellant then asked appellee to let him keep the mare until about the first of March and he agreed to this as he, appellee, would not need her until about that time. The appellant in the meantime wanted to use her. Appellee did not take the mare from the stable and left her in the same stable where she was at the time he arrived at appellant's house. Appellee never had the mare in his actual possession. He never offered the appellant the note he held against him, and filed the note before the justice of the peace when he brought a suit for the mare in controversy.

He said that appellant said he would try to get the money for appellee. Appellee had his wife write an order to appellant which was as follows: "Elgin, you are hereby notified to pay the money or turn the horse over to Mr. Anderson." The appellant refused to deliver the mare to appellee's agent, Anderson, denying that he had sold her to the appellee, for the consideration mentioned, but claimed that appellee was to pay him the difference between the note, with interest, and the account and the purchase price agreed upon between them, which was $80.00. Appellee then authorized his wife to send and get the mare, but she failed to get her. He went the second time to see appellant and appellant told him that he had changed his mind and that appellee could not get the mare. Appellee's testimony as to what took place at appellant's barn between appellant and appellee in regard to the sale and delivery of the mare is corroborated substantially by appellee's son, who was present.

The testimony of appellant was substantially as follows: He never sold the mare in controversy to appellee in consideration of the note and account held by appellee against him. He did not deny owing the amount of the note and account. Appellee came to his house and wanted to buy the mare for the note and account and appellant agreed to let appellee have her at $80.00 if appellant could not get up the money by the first of March to pay off the note and account. Appellant and appellee went from his house down to the horse lot where the mare was in the stable. Appellant didn't open the door of the stable that the mare was in. He didn't think appellee went in the stable. The mare was not taken out of the stable, and appellee left her in the same stable she was in when he came to appellant's house that morning. Appellant didn't deliver the mare to the appellee and never agreed to deliver her except upon condition that appellee pay appellant the sum of $80.00, which was appellant's price for the mare; that is, appellee was to surrender appellant's note and cancel his account and pay appellant the difference which would amount to

about ten dollars. When appellee afterwards sent for the money or the mare appellant told them they could not get the mare unless appellee would agree to allow appellant as much as $80.00, and deduct therefrom the amount of the note and interest and the account.

Appellant further testified that the trade was as follows: "When I agreed to let the plaintiff have the mare it was understood that if I didn't get up the money to pay off my indebtedness to him by the first of March that Mr. Barker then was to have the mare at the price of $80.00, and I never did agree to deliver the mare upon any other conditions as I needed the use of the mare and that was the reason I asked him when he would need her, and he said about the first of March, and I intended that if I could to get the money and pay him by that time and keep the mare."

The court, among other instructions, gave the following:

"4. The court instructs you that in order to constitute delivery of a chattel from a vendor to a vendee, it is not always necessary for the vendee to remove the property from the premises, nor even take manual possession of it, and in this case, if you believe from the evidence that there was a complete contract of sale by defendant to plaintiff of the horse in controversy, and if you believe plaintiff and defendant at the time of sale agreed that plaintiff should take the horse and that plaintiff's ownership of the same was recognized and agreed to by plaintiff and defendant, then the court tells you that there was a delivery in law, although plaintiff didn't remove the horse from the premises nor take manual possession."

The court refused, among others, appellant's prayers for instruction as follows:

"4. The jury are further instructed that if you believe from the evidence that at the time of the alleged sale by defendant to plaintiff of the gray mare in controversy, that defendant owed said plaintiff a note and also an account, that said note was not delivered to de-

fendant at the time of the alleged sale, and that the mare was in the possession of the defendant, being used and worked by him and was not delivered at the time of the alleged sale, the court tells you that there was no sale of said mare and you will find for the defendant.

"5.   The court instructs the jury that if they believe from the evidence that at the alleged time when plaintiff claims he purchased the mare in controversy, that the mare was in the stable of the defendant, and the mare was not taken out of the said stable, or even bridled or haltered by plaintiff, then the court tells you that the mare was not delivered by the defendant to plaintiff and you should find for the defendant.

"6.   The jury are further instructed that if you believe from the evidence that at the alleged time of sale of the mare on February 6, 1912, that it was agreed between the parties that the mare was to be delivered at a future date about March 1, 1912, and the defendant refused to deliver said mare at said future time, then the court tells you there was no delivery of the mare and you will find for the defendant."

The verdict and judgment were in favor of the appellee.   This appeal is duly prosecuted.

*E. H. Vance, Jr.,* for appellant.

1.   There was no completed sale.   The minds of the parties never did meet in agreement on the terms of the sale.

2.   There was nothing delivered by appellee to appellant by way of purchase price nor any amount agreed upon, and the testimony shows that there was no delivery of the mare to appellee, either actual or constructive.   66 Ark. 135; Kirby's Dig., § 3654; 91 Ark. 240.

*J. C. Ross* for appellee.

1.   As to whether or not there was a complete sale and delivery, it was a question of fact for the jury, first, as to the existence of the contract, and, second, as to what the contract was, its extent and limitations.   Their verdict establishes the fact that there was a complete sale and

delivery. 9 Cyc. 786 (b); Thompson on Trials, § 1105; *Id.* 1108; 19 Ark. 566, 570; 23 Ark. 244; 19 Ark. 566; 62 Ark. 592; 91 Ark. 240, 242.

WOOD, J., (afer stating the facts) : Appellant contends that the uncontroverted evidence shows that there was no completed sale by a meeting of the minds of the parties as to the consideration to be paid, and that there was no completed sale by a delivery of the mare in controversy. But we are of the opinion that these were questions for the jury under the evidence, and that these questions were properly submitted in the instructions that the court gave. On the questions of delivery and what is necessary to constitute a completed sale the court modeled its instructions according to the doctrine announced by this court in several cases. See *Beller* v. *Block,* 19 Ark. 566; *Burr* v. *Williams,* 23 Ark. 244; *Lynch* v. *Daggett,* 62 Ark. 592; *Shaul* v. *Harrington,* 54 Ark. 305; *Guion Merc. Co.* v. *Campbell,* 91 Ark. 240.

In the last of the above cases we held (quoting syllabus) : ''The title to personal property will pass and the sale be complete if it is the intention of the parties to transfer the title on the one part and to accept same on the other, and in pursuance thereof a delivery is made, even though something remains to be done; as, for example, the fixing of the quantity or exact value of the property or the payment of the purchase money.''

The alleged contract of sale being a verbal one and the testimony concerning it being in conflict, it was a question for the jury to determine as to whether the sale was made and the terms thereof. 9 Cyc., p. 786. See also Thompson on Trials, §§ 1105-1108.

Such of appellant's prayers for instructions as were correct were covered by the instructions which the court gave. For instance, prayer No. 6 which the court refused was covered substantially by instruction No. 3 which the court gave, in which the court told the jury that if there was a conditional sale only and that the mare was to be delivered in the future and was not delivered that there was no sale. Prayers 4 and 5 were prop-

erly refused. No. 4 made it necessary that the note and the account representing the purchase money for the mare should be paid to the appellant before the sale was completed. This is not the law. See cases *supra.* No. 5 made an actual manual delivery of the mare from appellant to appellee necessary to complete the sale. This was also not the law. See cases *supra.*

The evidence was sufficient to sustain the verdict, and the judgment is therefore affirmed.