N. P. Sloan Company v. Barham.

Opinion delivered April 14, 1919.

1. TRIAL—SALE—INSTRUCTIONS IGNORING ISSUES.—In an action for price of cotton destroyed in a warehouse before shipment to buyer, instructions requested by the buyer that it did not become liable for the cotton prior to its delivery or the acceptance of a draft to which the bill of lading was attached, *held* properly refused as leaving out of account the seller's contention that a completed sale had been made.

2. CONTRACTS—LAW GOVERNING.—The law of the place of performance controls in an action for breach of contract.

3. SALE—ACTION FOR PRICE—JURY QUESTION.—In an action against a purchaser of cotton which was destroyed by fire in the warehouse before being shipped, it was a jury question whether the parties intended that title should pass before the cotton was loaded and shipped and received by the purchaser at its office.

4. SALES—PASSING OF TITLE—INTENT.—If buyer and seller of cotton intended that title should pass upon the conclusion of a telephone conversation, or when the warehouse receipts for the cotton in question were separated from other receipts for other cotton owned by the seller, a delivery was accomplished, and the title passed upon the happening of that event; but if the delivery was to be accomplished and the title passed only on the acceptance of the draft with bill of lading attached, there was no completed sale.

5. SALE—PASSING OF TITLE.—If the title to cotton had already passed, with the understanding that the cotton would be shipped after all negotiations between the parties had ended, such requirement did not defeat the sale, though the cotton was subsequently destroyed by fire.

6. TRIAL—MISLEADING INSTRUCTION.—In an action for the price of cotton destroyed in warehouse before shipment to the buyer, an instruction that if the jury found that the buyer instructed the seller to purchase cotton, and the seller did so under such instruction, and the cotton burned, the seller was entitled to recover the amount agreed on if the fire was without his fault, was abstract and misleading; there being no question of agency.

7. SALES—ACTION FOR PRICE—EVIDENCE.—In an action for the price of cotton sold but destroyed by fire in the warehouse before actual delivery, testimony of the cashier of a bank with which the buyer did business, and of a cotton buyer, in regard to insurance on all cotton purchased by the buyer *held* incompetent as forming no part of the transaction.

8. SALES—ACTION FOR PRICE—EVIDENCE.—In an action for the price of cotton destroyed in warehouse before actual delivery testimony of seller as to policies of insurance held by the buyer on all cotton purchased by it *held* competent.

Appeal from Union Circuit Court; *Chas. W. Smith,* Judge; reversed.

*Powell & Smead,* and *Will C. Thompson,* of Dallas, Texas, for appellant.

1. The court should have instructed a verdict for defendant. The title to the cotton did not pass until all the acts usual to a sale of cotton were complied with and there was no sale. 19 Ark. 573; 24 *Id.* 549. The cotton must be loaded on cars at the expense of plaintiff and bill of lading secured and appellant notified and draft drawn. There was no liability upon appellant, as Barham failed in a number of particulars and is not entitled to recover. 92 Ark. 287; 50 *Id.* 20; Benjamin on Sales, § 399; 2 Schouler, Pers. Prop., § 27, *et seq.;* 5 Ann. Cas. 263; 2 L. R. A. (N. S) 79; 77 Ark. 482; 113 Am. St. 160; 44 L. R. A. (N. S.) 463; 88 Ark. 270; 114 S. W. 216; 89 Ark. 342; 116 S. W. 1171; 92 Ark. 287.

2. Under the undisputed evidence defendant below was entitled to judgment. 70 So. 686; 118 N. E. 239; 93 S. E. 1030; 192 Ill. App. 545; 84 S. E. 880; 22 N. W. 886.

3. Sloan & Co. were not liable, as no title to the cotton passed, Barham failing to segregate the cotton or load it or take bill of lading, or draw a draft or furnish an invoice. 79 Ark. 353; 78 *Id.* 511; Story on Sales, § 296; 29 Tex. 209; 90 S. E. 816; 112 Fed. 258; 80 *Id.* 878; 38 Atl. 212; 80 Pac. 963; 89 S. W. 1130; 75 N. W. 1; 74 *Id.* 670; 66 N. E. 1104. There was no delivery to a carrier so as to vest title. 80 Ark. 269.

3. The contract was an Arkansas one. The laws of Louisiana did not apply and were not plead. 72 S. W. 893. The offer to buy was accepted in Arkansas by Lake in Arkansas. Rul. Case Law, "Conflict of Laws," § § 26-27; 15 R. I. 380; 2 Am. St. 902; 5 Atl. 632; 2 Elliott on Cont., § 1116. The cotton was to be delivered at El Dorado in Arkansas. 80 Ark. 399; 66 *Id.* 464; 33 *Id.* 645;

2 Elliott on Cont. 1112; 9 Cyc. 691; 91 U. S. 406; 23 S. W. 245.

4. Lake, defendant's agent, was without authority to bind it by the contract. 105 Ark. 111; 126 *Id.* 405. Plaintiff was charged with notice of Lake's want of authority. 105 Ark. 111.

5. There was error in the admission of testimony, or in the giving and refusal of instructions.

*J. W. Elder* and *Mahony & Mahony,* for appellee.

1. The record shows that the transaction and course of dealing between the parties constitute a contract as to render appellant liable for the purchase price of the cotton. The verdict of the jury has settled all conflicts in the evidence and their finding is conclusive as to the liability of appellant.

2. The sale was a Louisiana contract, and under Louisiana laws appellant became liable without delivery. La. Code, §§ 2552-2530.

3. The law of the case, see 42 Col. 442; 74 Conn. 675; 21 Ill. 526; 66 Kan. 463; 25 N. Y. 520; 33 Mich. 386; *Kelton* v. *Lee,* 35 Ore. 573; 123 Wis. 598; 135 Wis. 605; 31 Ark. 131; 100 U. S. 124.

4. There is no error in the instructions and the evidence supports the verdict. The instructions fairly state the law and there are no reversible errors.

SMITH, J. The appellant, hereinafter referred to as the company, is a large cotton company with principal offices in Philadelphia, and is extensively engaged in buying and exporting cotton. The company maintained an office at El Dorado, Arkansas, of which G. W. Lake was in charge, and at this point bought large quantities of cotton in the adjacent territory. Appellee, C. C. Barham, who was the plaintiff below, was a merchant and cotton buyer at Dubach, Louisiana, a town in the territory covered by Lake for his company. On December 26, 1917, Lake, at El Dorado, called Barham at Dubach over the phone, and in the conversation which then occurred contracted to buy forty bales of cotton at 29 cents

per pound.   Later in the day Barham called Lake over the phone and advised him that he knew of 110 more bales which he could buy at the same price, and Lake agreed to take that also.   Thereupon Barham bought 115 bales of cotton at 28¾ cents per pound and sold Lake 110 of them at 29 cents.   Barham testified that in consummating the negotiations he asked Lake about the insurance on the cotton and Lake answered that they would take care of the insurance, as they already had insurance on all the cotton they bought.   Lake, however, denied that this conversation occurred.

Barham further testified substantially as follows:

Immediately after selling this cotton he proceeded to have it brought in from the country for shipment to El Dorado.   The cotton was delivered to Barham at the warehouse in Dubach, where it was destroyed by fire on the night of December 29.   On December 27 Barham made a list of the cotton then in the warehouse and completed this list on the 28th when the balance of the cotton was delivered to him at the warehouse, and in the afternoon of that day his bookkeeper mailed this list to the company at El Dorado.   It was the custom of the warehouse people to issue a receipt for each bale of cotton, which gave the gin number of the bale and its marks and weight, the cotton being weighed as it was received at the warehouse.   Barham took the tickets for the 150 bales he had sold the company and placed them in a wrapper on the back of which he wrote "S. C. Sloan Company"— having mistaken the initial letters of the company—and he deposited this package with his local bank.   The warehouse people proceeded to load out this cotton as rapidly as they could secure cars, and two cars—one containing twenty-six bales of cotton and the other twenty-eight—were shipped and delivered to the company at El Dorado.   A third car, containing twenty-six bales, was burned in the fire which destroyed the warehouse after a bill of lading from the railroad had been obtained therefor.   On the morning after the fire Lake called Barham over the phone and asked if any of the company's

cotton had been destroyed, and Barham answered that all of it had burned except fourteen bales, whereupon Lake directed that the fourteen bales be shipped, and this was done at once. Barham at the time asked Lake if he should draw against the company at El Dorado for the cotton that had been burned, but Lake told him not to do so until he had taken the matter up with the company. Later the company paid for the cotton burned in the car and for that shipped after the fire, but declined to pay for the fifty-six bales burned in the warehouse. Whereupon this suit was brought, and at the trial below judgment was recovered against the company for the value of the fifty-six bales burned in the warehouse, and this appeal has been duly prosecuted.

On behalf of the company there was testimony that the list which Barham said he made on the 27th and 28th was received through the mail in an envelope which bore a postmark the day after the fire. Lake admitted asking Barham about the fire and directing the shipment of the fourteen bales, but he stated that the conversation in regard to the draft covering burned cotton related only to the cotton destroyed in the car. Lake also denied having made any statement in regard to having insurance which covered the cotton in the warehouse.

As affirmative testimony and over the company's objection Barham had the cashier of the Citizens National Bank at El Dorado—the bank with which the company did its banking business at El Dorado—testify in regard to the insurance carried by the company. By this witness it was shown that the company had insurance "to cover all cotton in bales in the United States of America purchased by the assured or for their account, attaching from the moment the cotton becomes the property of the assured or legally at their risk, provided, however, that no cotton shall be covered hereunder prior to actual delivery to the assured or their agent, unless specifically identified by marks and numbers or other designation in possession of the assured or mailed to the assured prior to loss. * * *"

This testimony was given from a statement which had been furnished the bank as a basis in part to cover any risk from fire assumed by the bank in handling the drafts drawn against the company for cotton bought by Lake. Barham was also permitted over the company's objection to prove by a cotton buyer at Junction City that he (the cotton buyer) had sold and delivered fifty bales of cotton to the company at Junction City and that in a conversation over the insurance of this cotton, then being in a warehouse at Junction City, Lake told him that the cotton was covered with insurance as soon as it was sold to the company and that immediately after he bought cotton he reported the purchase and the company's insurance then covered it.

Over the company's objection Barham was also permitted to introduce and read in evidence sections 2552-2530, Louisiana Code, on the subject of sales of personal property, which reads as follows: "If after the contract and before the seller has been required to deliver the thing it ceases to be susceptible of delivery, without his fault, the buyer is still bound to pay the purchase price."

On behalf of the company liability was denied upon the ground that there had been no delivery, and Lake testified that there had been no delivery. This answer was stricken out on Barham's motion for the reason that the answer was the mere opinion of the witness. Thereupon the witness stated the custom under which he bought this cotton as follows: It was the seller's business to deliver the cotton f. o. b. cars and to obtain a bill of lading therefor subject to shipper's order, notify N. P. Sloan Company. The seller would deposit with his local bank a draft on the company at El Dorado for the purchase price of the cotton, with the bill of lading attached, and the local bank would transmit this draft to its correspondent bank at El Dorado, which bank would notify Lake of its possession of the draft. Whereupon Lake for the company would accept in writing the draft on the company and receive the bill of lading from the bank. The possession of the bill of lading was essential to se-

cure a delivery of the cotton from the carrier which had transported the cotton to El Dorado. That the two car loads of cotton of the 150-bale purchase were delivered and paid for in this way, and the remainder would have been handled in the same manner but for the fire.

The company specifically pleaded as a defense the statute of frauds; but that defense is not insisted upon here for the reason no doubt that a delivery of a portion of the cotton had in fact been made. *Arkansas Short Leaf Lbr. Co.* v. *McInturff*, 134 Ark. 284.

It was also shown that both buyer and seller accepted as correct the weights of cotton made by the warehouse people upon receiving the cotton into the warehouse, and the weight of each of the fifty-six bales had thus been determined, although the bales were in different parts of the warehouse at the time of the fire.

Over the objection of the company the court gave an instruction numbered 1, reading as follows: "No. 1. The court instructs the jury that if you find from the preponderance of the evidence in this case that there was a meeting of the minds and an agreement by both of the parties to the sale and purchase; that is to say, upon the one part there was an intention and offer to sell and on the other part an acceptance of such offer and an intention to buy, and that the purchaser did intend to buy and also accept the offer and the seller did intend to sell and did accept the offer, then you are told that is a contract of sale, and if you further find from a preponderance of the evidence in this case that the quantity and price of the chattel were determined and agreed upon, and a part of the property was delivered by the seller and accepted by the purchaser, and a part of the property was destroyed by fire without negligence or fault on the part of the seller, then you are told that your verdict must be for the plaintiff."

Other instructions were also given which either ignored the question of delivery or treated it as an accomplished fact.

The court also gave over the company's objection an instruction numbered 3, which reads as follows:

"No. 3. If you find from a preponderance of the evidence in this case that the purchaser instructed the plaintiff to purchase an additional 110 B-C of the lot of 150 B-C and the plaintiff did so under the instruction of the purchaser and said cotton afterwards burned, then you are told that the plaintiff is entitled to recover the amount agreed on according to the price and weights as shown by the warehouse receipts, provided said fire was without fault or carelessness on the part of the plaintiff."

On behalf of the company instructions were asked which declared the law to be that the company did not become liable for the cotton prior to its delivery at El Dorado or the acceptance of a draft to which the bill of lading was attached. But these instructions were properly refused as leaving out of account the contention of Barham that a completed sale had been made which passed the title to the cotton as it lay in the warehouse.

On the other hand, Barham insists that the contract is a Louisiana contract and that under the statute of that State set out above no delivery at El Dorado was necessary to bind the company, as the delivery was prevented by the fire for which Barham was not responsible. But we can not say as a matter of law that this was a Louisiana contract, for the law of the place of performance controls in an action for breach of a contract, and the very point at issue is, where was the contract to be performed? If the parties intended to accept the telephone conversation as constituting a delivery of the cotton, then a delivery was made and Barham would be entitled to recover under the Louisiana statute offered in evidence, and he would be entitled to recover under the statute if a performance of the contract by a delivery of the cotton in this State was not contemplated. But if there was a delivery he could recover without the aid of this statute for a breach of a contract of sale. The record presents the question, Had the cotton been delivered? According to the testimony of Lake the title to this cot-

ton would not have passed until a draft, with the bill of lading attached, had been presented and accepted and the bill of lading delivered to him, and if the parties contemplated that this acceptance of the draft should be a condition precedent to the passing of the title, then the contract was not only executory but was an Arkansas contract, as the contract would have been performed in this State by the presentation and acceptance of the draft, and the delivery of the cotton in this State.

In the case of *Isbell-Brown Co.* v. *Stevens Gro. Co.*, 118 Ark. 20, we said: "Here, the facts are essentially different. The goods were consigned to 'shipper's order,' at Newport, Arkansas, and the order contained this clause: 'Terms: Draft with B. L. payable upon arrival and examination of goods.' As between seller and purchaser, it is a general rule that the title to goods shipped under a bill of lading in favor of the seller or his agent with a draft attached does not pass to the buyer until he has complied with the conditions. See case notes to 5 Am. & Eng. Ann. Cases, 263, and 2 L. R. A. (N. S.) 79.

"The rule has been recognized by this court. See *Arkansas Southern Ry. Co.* v. *German National Bank*, 77 Ark. 482; *Josey* v. *State*, 88 Ark. 270; *Midland Valley Rd. Co.* v. *J. A. Fay & Eagan Co.*, 89 Ark. 342; *American Jobbing Assn.* v. *Wesson*, 92 Ark. 287."

Without dispute this cotton would have been consigned on a "shipper's order" bill of lading, as were the portions of the lot which had been loaded, except for the fire, and the question should, therefore, have been submitted to the jury whether the parties intended by their contract to pass the title before the cotton was loaded and shipped and received at El Dorado.

In the case of *Georgia Marble Finishing Works* v. *Minor*, 128 Ark. 124, we said: "It is first contended on the part of defendant that according to the undisputed evidence the judgment is erroneous for the reason that there was no delivery of the property, that the sale was, therefore, incomplete, and that the remedy of the plaintiff, if any, was an action for breach of the original con-

tract of sale. This contention would be entirely sound if the record disclosed the consignment of marble to have been to the shipper's own order. In that case there would have been no delivery so as to consummate the sale, and, as contended, the remedy of the plaintiff would have been a suit to recover damages on account of a breach of the contract. A delivery, either actual or constructive, is essential to the consummation of a sale of chattels and the title does not pass until there has been such a delivery. *Hodges* v. *Nall*, 66 Ark. 135; *Deutsch* v. *Dunham*, 72 Ark. 141.''

The statement of the law quoted must be read, however, in the light of the facts of that case. We had there recognized and restated the well established proposition that the delivery of goods to a common carrier, pursuant to the directions of the purchaser constitutes a delivery to the purchaser and consummates the sale; but by the language quoted we qualified the statement of the law that the delivery to a carrier is such a delivery to the consignee or the purchaser as consummates the sale, where a contrary intent is evidenced by consigning the goods on a shipper's order bill of lading for the purpose of retaining control of the property until the same has been paid for or other precedent condition performed. In other words, the sale becomes complete upon delivery of the property sold, and the parties may, by their contract, when dealing with articles as bulky as bales of cotton, provide that that essential occurs and the title thereby passes upon the happening of any event which it is agreed shall evidence the delivery. So here, if it was intended by the parties that the possession of the cotton should pass upon the conclusion of the telephone conversation, or when the warehouse receipts for the cotton in question were separated from other receipts for other cotton owned by Barham, then a delivery was accomplished and the title passed upon the happening of that event. But if the delivery of the cotton was to be accomplished and the title thereby passed only upon the acceptance of the

draft with bill of lading attached, then there was no such completed sale as would support this action.

It is, of course, undisputed that both parties understood that the cotton would be shipped to the company after all the negotiations had ended; but this requirement would not defeat the sale if the title had already passed. The finality of the sale as such is not affected by any duty which the seller may assume in regard to the property sold once the title has passed.

In the case of *Lynch* v. *Daggett*, 62 Ark. 592, this court decided (to quote the syllabus) that, "A sale of specific personal property may be final and complete, where such is the intent of the parties, although something remains to be done subsequently by the seller as part of the consideration of the contract, as to deliver the property at a place named." Other cases to the same effect are *Anderson-Tully* v. *Rozelle*, 68 Ark. 310; *St. L., I. M. & S. R. Co.* v. *Wynne H. & C. Co.*, 81 Ark. 389; *Priest* v. *Hodges*, 90 Ark. 131; *Elgin* v. *Barker*, 106 Ark. 482; *McDermott* v. *Kimball Lbr. Co.*, 102 Ark. 344; *Guion Merc. Co.* v. *Campbell*, 91 Ark. 240; *Shaul* v. *Harrington*, 54 Ark. 305.

A recent case dealing with the question now under consideration is that of *Dickson-Rodgers Trading Co.* v. *O. O. Scroggins Co.*, 136 Ark. 33, 206 S. W. 49. There sixty bales of cotton were sold while in the seller's warehouse. The sale was made under the rules of the Little Rock Cotton Exchange, according to which the transaction is complete upon the delivery of the cotton itself to the railroad and the issuance of a bill of lading f. o. b. cars with draft attached. At this point the insurance of the purchaser becomes effective, and not till then. An invoice and bill of lading of all the cotton was prepared by the seller, who then proceeded to haul the cotton to the railroad. But the platform was so crowded that only thirty of the bales could be loaded on it and the railroad issued bills of lading for only that number of bales. The remaining thirty bales were destroyed that night by fire in the warehouse. Under these facts we there feel that

the real question was, what was the understanding of the parties to the transaction? and that we could not say as a matter of law that the sale was not complete because the cotton had not been delivered to the carrier, and that the cause was properly submitted to the jury to determine whether or not there was a completed sale. The present record presents a similar question which should have been submitted to the jury. Other cases holding that delivery is a question of intent of the parties are: *Georgia Marble Finishing Works* v. *Minor*, 128 Ark. 128; *Gibson* v. *Inman Packet Co.*, 111 Ark. 521; *Lynch* v. *Daggett*, 62 Ark. 592; *Guion Merc. Co.* v. *Campbell*, 91 Ark. 240; *Shaul* v. *Harrington*, 54 Ark. 305; *Elgin* v. *Barker*, 106 Ark. 482; *Deutsch* v. *Dunham*, 72 Ark. 141; *Summit Lbr. Co.* v. *Sheppard*, 102 Ark. 88, 91; *White* v. *McCracken*, 60 Ark. 613; *Brown* v. *Simsboro Cash Store*, 102 Ark. 531.

We are all agreed that instruction numbered 3 set out above should not have been given, as the question there presented is wholly abstract. There is no question of agency in the case and the instruction is, therefore, misleading.

The majority of the court are also of the opinion that the court erred in permitting the cashier of the bank and the cotton buyer at Junction City to testify in regard to the policies of insurance; but we are all agreed that Barham's testimony in that respect was competent. The majority are of the opinion that the testimony of the cotton buyer and the bank cashier was incompetent because it formed no part of the transaction and had no relation to the transaction under review. That the recitals in the policies of insurance written some months before the occurrence of the transaction out of which this litigation arises could have no relevancy in determining what contract was made between Lake and Barham, and that no recital in these policies could control subsequent contracts or be of value in construing a contract made with one who was not a party to these insurance contracts and who in fact knew nothing of their existence or recitals.

Mr. Justice WOOD and the writer, however, are of the opinion that the testimony of both the cotton buyer and the bank cashier was competent, not as a part of the *res gestae,* for such it could not have been, but as explaining the intention of the parties at the time of the sale. The subject-matter of the sale was very valuable—worth many thousands of dollars—and neither party was willing to assume the risk of carrying the property without insurance, but only that person could insure who owned the cotton. Neither could have had any insurable interest except that of ownership, and the ownership depended on the question whether the sale had been completed, and the intention of the parties determined that. Lake's statement (if he made it) that his policies covered the cotton was, therefore, tantamount to an assertion of possession, especially as he had wired his company the information of the purchase of this cotton after his last telephone conversation with Barham. Lake testified that this cotton was bought just as all other cotton was bought; that no exception was made in this case, and it was, therefore, important and competent to show that Lake regarded himself as being in posesssion of the cotton and his policies therefore in effect as soon as he had completely agreed with the seller on the terms of the sale, and the evidence held incompetent by the majority tended to show the company's custom of dealing in such matters. For the errors indicated the judgment will be reversed and the cause remanded for a new trial.