## Canadian Bank of Commerce *v.* George Baum & George W. Baum, trading as George Baum & Sons, Appellants.

*Bailment—Sale—Title—Fraud.*

The plaintiff holding the legal title and constructive possession of goods, but in equity being only the pledgee for security and repayment of advances made to K., the real owner, delivered the evidences of title to K., taking in return a storage receipt, with liberty to K. to sell, accounting and paying over the proceeds to plaintiff.    Defendants sent K. checks to be used to meet their notes which had been given previously as payment in advance for certain purchases.    K. used the checks for other purposes, and defendants were obliged to pay the notes themselves.    Subsequently, in anticipation of fraudulent failure, but without any knowledge or prior communication to defendants, K. sent the latter an invoice and bill of sale of the goods held under the storage receipt, and a few days later the goods were delivered to defendants.    *Held,* that the defendants took no title to the goods as against the plaintiff.

Argued March 28, 1898.    Appeal, No. 312, Jan. T., 1897, by defendants, from judgment of C. P. No. 2, Phila. Co., March T., 1896, No. 311, on verdict for plaintiff.    Before GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ.    Affirmed.

Replevin.    Before WILTBANK, J.

The facts appear by the opinion of the Supreme Court.

Verdict and judgment for plaintiff under binding instructions.    Defendants appealed.

*Error assigned* was above instruction.

*Alfred D. Wiler* and *George L. Crawford,* of *Crawford, Loughlin & Dallas,* for appellants.—Where a factor or consignee of merchandise for sale is at liberty, according to the contract or course of dealing between him and his principal, to sell at

any price he likes, and receive payment at any time he likes, but is to be bound, if he sell the goods, to pay the principal for them at a fixed price, and at a fixed time, irrespective of the price or credit for and on which he sells them, whatever the parties may think, or however they may call themselves principal and agent, the alleged agent, in such case, is making on his own account a contract of purchase with his alleged principal, and again in reselling : Ex parte White, L. R. 6 Chan. App. Cases, 402 ; Nutter v. Wheeler, 2 Lowell, 346 ; Peek v. Heim, 127 Pa. 500.

Premature payment by a purchaser to a factor, even when selling, not as owner, but as factor, to the knowledge of the purchaser, protects the purchaser against any claim of the principal, because the payment puts the factor in position to do justice to the principal : WILDE, C. J., in Fish v. Kempton, 7 M. G. & S. 690, 691. It is undisputed in the present case that the defendants had made payment, in cash and notes, for all the goods received by the defendants from the Keen-Sutterle Company, including the goods in question, though in part premature.

Even in the case of a simple factor and principal, where the principal permits the factor put in possession of the merchandise to sell it in his own name as apparent principal, without notice of the principal's interest, the purchaser has a right to consider the factor to all intents and purposes the principal, and the purchaser is entitled against the principal, to the same defense, whether at common law or by statute, of payment or set-off, or the state of the accounts between the purchaser and factor, or the equity arising from the previous course of their mutual dealings, which he would have against the factor : Evans on Agency (2d Eng. ed.), 460 ; Kelly v. Munson, 7 Mass. 324 ; Merrick's Est., 5 W. & S. 9 ; Carr v. Hinchcliff, 4 B. & C. 547 ; Fish v. Kempton, 7 M. G. & S. 687.

*N. Dubois Miller,* with him *Biddle & Ward,* for appellee.— The title of the plaintiff to the goods replevied was perfect : Moors v. Kidder, 106 N. Y. 32 ; Farmers' and Mechanics' Nat. Bank v. Logan, 74 N. Y. 568 ; Moors v. Wyman, 146 Mass. 60.

The title of the plaintiff had not been divested by the delivery of possession to the defendants : Paterson v. Tash, 2 Strange,

1178 : Laussatt v. Lippincott, 6 S. & R. 391 ; Newbold v. Wright & Shelton, 4 Rawle, 195 ; Rodriguez v. Heffernan, 5 John. Ch. 429 ; Gray v. Agnew, 95 Ill. 322; Warner v. Martin, 11 How. 209 ; Bott v. McCoy, 20 Ala. 578; McCreary & Barlow v. Gaines, 55 Tex. 485 ; Chicago T. P. P. Co. v. Lowell, 60 Cal. 454 ; Merchants' Nat'l Bank v. Trenholm, 12 Heiskell, 520 ; Young v. Scott, 25 La. Ann. 313 ; State Bank v. Gardner, 15 Gray, 362 ; Benny v. Pegram, 18 Mo. 191 ; Thompson & Co. v. Barnum & Co., 49 Ia. 392 ; Insurance Co. v. Kiger, 103 U. S. 352.

OPINION BY MR. JUSTICE MITCHELL, July 21, 1898 :

It appears by the statement of facts agreed upon at the trial that the original title to the goods in controversy upon their purchase in Arabia was made to the plaintiff bank, or its agents, who remitted the bills of lading or other title papers to the bank, which thereupon held the legal title and the constructive possession of the goods, with power to acquire the actual possession upon the arrival of the goods in this country. It is true that in equity the bank was merely a pledgee for security and repayment of the advances made by it to the Keen-Sutterle Co., the real owners, but with the relations of these parties between themselves, we are not now concerned. The bank being thus the legal owner delivered the evidences of title to the Keen-Sutterle Co., taking in return a storage receipt, with liberty to the Keen-Sutterle Co. to sell, accounting and paying over the proceeds. Under this receipt the bank retained its ownership of the property, and the Keen-Sutterle Co. acquired no title which could avail it or its creditors : Brown Bros. & Co. v. Billington, 163 Pa. 76. It had however authority to sell, and any valid exercise of that power would of course divest the title of the bank.

The defendants' title depends on a bill of sale and delivery in pursuance thereof, made by the Keen-Sutterle Co. under the following circumstances : Defendants were customers of the Keen-Sutterle Co. and, in October and December 1895, they sent to the company two checks, amounting to about $16,000 to be used to meet their notes which had been given previously as payment in advance for certain purchases. The Keen-Sutterle Co. used the checks for other purposes, and defendants were subsequently obliged to pay the notes themselves. On

January 8, 1896, the Keen-Sutterle Co., in anticipation of fraudulent failure, but without any prior communication to defendants, or knowledge on their part, sent the latter an invoice and bill of sale of goods received by them under the storage receipt from the plaintiff, and a few days later the goods in suit were delivered to defendants as part of said invoice.

It is clear that this was not a sale in the ordinary course of business, such as would be a valid exercise of the authority to sell contained in the storage receipt, if indeed it can be called a sale at all in anything but the barest outside forms. In City Bank v. Easton Boot & Shoe Co., ante, p. 30, at the present term, we held that a sale to a bona fide purchaser was none the less effective because made in contemplation of future delivery, and payment was made in advance. We should have no hesitation in applying the same rule to the present case if there was evidence that the bill of sale of January 8, 1896, was in performance of a previous contract of purchase by defendants of goods for which payment had been made. But the evidence distinctly negatives any such conclusion. The checks sent by defendants to the Keen-Sutterle Co. were to provide for payment of notes not then due but which had been given in payment for goods purchased long before January 8, and of which the goods billed to defendants on that day were not a part. If the Keen-Sutterle Co. should take up these notes when they came due they would owe defendants nothing, and defendants would have paid nothing for the goods in suit. The notes (except one which was taken up) were not yet due on January 8, but the Keen-Sutterle Co. had used the funds sent them by defendants, and knew they would be unable to pay the notes. They had therefore a prospective indebtedness to the defendants which they endeavored to discharge in part by the consignment of these goods. If the goods had been their own, the payment might have stood against other creditors or a general assignee, but it was not a sale of plaintiff's goods under the authority of the storage receipt, nor were defendants purchasers who parted with any present value on the faith of the goods. It is argued by appellants that the transaction may be sustained because the goods were received in satisfaction of the debt due them, and for this Bughman v. Bank, 159 Pa. 94, is cited. But in that case Fawcett & Sons, from whom the defendant took, were the

owners of the coal at the time of the taking, although their title was defeasible by their vendors for fraud. It was held by this Court that the case came within the line of previous authorities which would be followed, though with regret, but would not be extended. To apply the same rule to a case where the consignor had no title at all of his own at the time of the consignment, but only an authority to sell for account of his principal, would be an extension of the principle against the views of the court there expressed, and also against the settled rule in the chief commercial states. The general distinction is clearly expressed by the present Chief Justice in Levy v. Cooke, 143 Pa. 607 : " If the owner intended to transfer the property in the goods, as well as their possession, the transaction is a sale, and the property passes, however fraudulent the device may have been; but if he intended to part with nothing more than the bare possession, there is no sale and no property passes. In the former case the contract is not void ab initio, but voidable at the election of the vendor. Such voidable contracts may be affirmed and enforced, or they may be rescinded by the vendor at his election; but in the mean time, and until he does elect, if his vendee transfers the goods, in whole or in part, to an innocent third person for a valuable consideration, the right of the original vendor will be subordinate to that of such innocent third person: Benjamin on Sales, secs. 648, 649. The generally accepted doctrine is that a bona fide purchaser for valuable consideration, without notice of fraud from one who had fraudulently obtained both possession and property, will be protected; but mere possession, such as that of a bailee or a thief, will not enable a purchaser to acquire title, although he buys in good faith and pays full value." As already said the Keen-Sutterle Co. was a bailee with authority to sell, and had there been evidence here of a sale to defendants, the transaction could have been sustained, but the consignment of the goods was without the elements of a sale or purchase, and so manifestly in payment of a balance that would be due on a general account that the learned judge was quite right in holding that it did not divest the plaintiff's title.

Judgment affirmed.