## Estate of Edwin R. Cope, deceased.   Appeal of Henry T. Coates, trading as Henry T. Coates & Co.

*Sale—Contract—Course of dealing—Evidence.*

The course of dealing between a tradesman and his customer was for the latter to pick out prints and engravings from time to time as invoices of such articles were received, and to have them placed in drawers especially designated as receptacles for his purchasers.   No one had access to these drawers except the customer and the salesman.   The goods were

charged to the customer's account and were never thereafter carried in the general stock. The prices were marked upon the engravings and prints. The customer was in the habit of taking the articles from time to time from the drawers, and a bill was then sent to him for such as he took. No bills were rendered for goods until they had been ·taken away by the customer. When he died there was a large number of engravings and prints in the drawers. *Held*, that there was a completed contract of sale when the articles were placed in the drawers, and that his estate was liable for those which remained in the drawers at the time of his death.

Argued March 21, 1899.  Appeal, No. 1, Jan. T., 1899, by Henry T. Coates, trading as Henry T. Coates & Co., from decree of O. C. Phila. Co., July T., 1898, No. 226, dismissing exceptions to adjudication.  Before STERRETT, C. J., McCOLLUM, MITCHELL, DEAN and FELL, JJ.  Reversed.

Exceptions to adjudication.
The facts appear by the opinion of the Supreme Court.

*Errors assigned* were in dismissing exceptions to adjudication.

*John G. Johnson*, for appellants.—The facts as found by the learned adjudicating judge established a sale: Benjamin on Sales, sec. 1; Gardner v. Lane, 12 Allen, 39; Heilbutt v. Hickson, L. R. 7 C. P. 449; Dixon v. Yates, 3 Barn. & Ad. 313; Com. v. Hess, 148 Pa. 104; Scott v. Wells, 6 W. & S. 367; Bigley v. Risher, 63 Pa. 155; Bowen v. Burk, 13 Pa. 148; Huthmacher v. Harris, 38 Pa. 498; Jones v. Gibbons, 8 Exch. 920; Griswold v. Scott, 29 Atl. Rep. 1013; Smith v. Tobey Furniture Co., 57 Ill. App. Rep. 379; Proctor v. Jones, 2 Car. & Payne, 532; Rhode v. Thwaites, 6 Barn. & Cress. 388; Simmons v. Swift, 5 B. & C. 862; Hodgson v. LeBret, 1 Campbell, N. P. 233; Anderson v. Scott, 1 Campbell, N. P. 235; Elmore v. Stone, 1 Taunton, 460.

The conduct of the parties not only was not inconsistent with, but was corroborative of, the fact of a sale.

*Samuel Gustine Thompson*, for appellee.

OPINION BY MR. CHIEF JUSTICE STERRETT, May 23, 1899:
This appeal is from the decree of the court below disallowing appellants' claim for $8,037.55 for books and engravings sold by

**them to** said decedent, except to the extent of $880 which represents the value of goods delivered at his home.

Mr. Cope, the decedent, was a gentleman of independent fortune and of literary and artistic tastes. For many years he had been an extensive purchaser of books and engravings from appellant. During the last three years of his life, his payments to them aggregated over $11,000. The nature of appellants' present claim, for balance disallowed by the orphans' court, will perhaps be best understood by referring to the testimony of witnesses examined in support thereof. Col. J. E. Barr, their salesman, testified, inter alia, as follows: "Mr. Cope came to the store every time, I think, that he came to town; made it a place where he always staid, and when any new invoices of prints came in, I would always tell him and he would come in and go over them,—look at them,— and if there was anything he liked he would say: 'Put them away for me,' 'I will take this,' or 'I will take that,' and I put them away in the drawers. Q. Were they put in general drawers or special drawers? A. Special drawers set apart for him, with nothing else in. Q. And drawers to which he had access? A. He and I; nobody else touched them. . . . . Q. Would the prices be named? A. He would ask the price, and I would give it to him; mark it on the prints. . . . Q. These prints, after he bought them and the price agreed upon marked and put away in his drawers, and did he get them from time to time? A. If you will allow me to tell you, Mr. Cope was in the habit of making mats for his own prints, and making little biographical sketches on the back of each, and then put them away into portfolios and catalogue them, and in that way he would take them home as fast as he could do that, and put them away in proper portfolios; and in that way the prints in the store would accumulate faster than he could take them home. He did not want them at home lying about, because they were fine prints, and he just took enough home, from time to time, to catalogue and mat them and put them away in the portfolios; and in the mean time invoices came from all parts of the world, and he would see them all and select what he wanted; and they were put away in these drawers. Q. And then, as he finally took them away, you sent a bill for them? A. Yes, sir. Q. You did not send a bill until he took them away? A. Oh, no. Q. He was a peculiar man, was he not? A. Yes, sir; he would

make his own list, when he would take them home; he would bring the list, which he would hand to me and tell me to charge them up. Q. Were those put aside in those drawers for approval or actually sold? A. No; absolutely sold. I would not dare to take them out. Q. They were his? A. Yes, sir."

Appellants' bookkeeper testified that charges were made and bills rendered in the manner sworn to by Col. Barr, their salesman. He further testified: "Q. When you took account of stock each year, including these drawers, did you put that in your general stock, or how did you charge the amount in these drawers? A. It was charged up to Mr. Cope, so that we would not take it into stock each year. Q. On your book it would appear as charged each year? A. Yes, sir. By Mr. Thompson: It was a memorandum merely for the purpose of showing where the goods were in your account of stock; of course it was that? A. Showing where they were. Q. That is all? A. They were not belonging to us at all; they were not included in our stock. Q. But you never rendered any bill for them, of course? A. No.

On behalf of the appellee, evidence was offered to show that the decedent always paid his bills promptly, and at the time of his death left no other outstanding accounts, except for medicine and medical attendance. It was also attempted to be shown by a salesman of the publishing house of J. S. Lippincott & Company that decedent was in the habit of having books laid aside for inspection. This testimony was as follows: "Q. Was it not at times a habit of his to have set aside the books, that he would come back and confirm or disaffirm? A. No, sir. Q. He was always prompt in his payment? A. If he wanted a book, he would say, 'I will take it.' If I said to him, 'Perhaps you would like to look at it a different time,' he would say 'No,' he did not want it. He was a man that would make up his mind in a very little time if he wanted an article." This testimony on behalf of the appellee, so far as it has any bearing on the case, is corroborative of appellants' witnesses and tends to support their contention.

The learned auditing judge, who was sustained by the court in banc, held that there was no contract of sale, "because the minds of the parties did not come together in a common intention. In this we think he was mistaken. The evidence to support the auditing judge's conclusion is far from being sat-

isfactory. In examination in chief of appellants' salesman, Mr. Barr, he was emphatic in his assertion of an unconditional sale, and this was reiterated by him on cross-examination. In endeavoring to strengthen appellee's line of defense, he was asked on cross-examination: " Q. Was it not your habit of showing him prints, and was it not his habit to look at them and then come back and, having concluded to take them, to order them? A. I never put these away until he told me to do so. Q. Did he not tell you to lay these aside? A. No, sir; I never laid any prints aside for Mr. Cope." The language employed by the decedent is entirely consistent with a consummated contract of sale. The conduct of appellants was uniform in treating the transaction as a sale. In every case, the selected engravings were marked with their respective prices, separated from the common stock and made accessible to the decedent and Mr. Barr alone, then charged to him, and never thereafter carried into the general stock. The learned auditing judge attached too much importance to the fact that the bills were not rendered until the goods were taken away. There is nothing in that circumstance that is inconsistent with an absolute sale, especially when we consider the uniform course of dealing, which the decided weight of the evidence shows the parties themselves adopted. The appellants were under no obligation to notify Mr. Cope of the charge. It would not have been in accord with their mutually recognized mode of dealing, and might have resulted in the loss of a valuable customer. If it had been sought to establish the contract of sale by the dealings of the parties alone without regard to the evidence of their mutual understanding in relation thereto, there might be some force in the position contended for by the appellee; but, the direct evidence of a sale and mutually understood mode of delivery, in drawers specially designated as receptacles for decedent's purchases, is positive and uncontradicted, except by the circumstances relied on by the appellee. Unfortunately for him, none of those circumstances are inconsistent with a sale.

It follows from what has been said that the assignments of error must be sustained.

Decree reversed at appellee's costs and ordered that the record be remitted to the court below with instructions to allow the residue of appellants' claim.