# Perkins, to use of Bank of Commerce, *v.* Halpren et al., Appellants.

*Contracts — Sales — Executed and executory sales — Delivery— Title—Course of dealing—Trial without jury—Findings of fact— Appeals—Practice, Supreme Court.*

1. There may be a bargain and sale of goods sufficient to transfer the title and thus to support an action for goods bargained and sold without such transfer or delivery as would amount to a transfer of possession.

2. Findings of fact by the trial judge in an action at law in a case tried without a jury, to the effect that a sale of goods was completed at the time they were billed to the vendee, have the effect of a verdict of a jury and will not be set aside if there is evidence to support them.

3. In an action for goods sold and delivered to defendants it appeared that defendants had guaranteed the account of plaintiff at a national bank. By means of the credit thus obtained plaintiff purchased goods of an English merchant and the goods were shipped to the bank at which plaintiff's account had been guaranteed together with the bills of lading with drafts attached. The bank accepted the drafts, and charged the amount thereof to the plaintiff's account and plaintiff gave a trust receipt whereby he agreed to hold the merchandise in trust as the property of the bank with liberty to sell the same for the account of the bank and deliver the proceeds to the bank to be applied against the acceptance of the draft. Subsequently plaintiff billed certain of the goods to defendants, and defendants were permitted to withdraw the goods from the warehouse upon payment of the duty. Part of the goods included in such shipment were paid for by defendants. About the same time plaintiff assigned his claim against the defendant for the unpaid balance of the price for value to a third person, to whose use the action was brought. Defendants had notice of the assignment. Plaintiff's account at the bank became in arrears and the bank sold the goods in the warehouse and applied the proceeds to pay plaintiff's indebtedness to it. Defendants contended that there was no executed contract of sale and that they never had received title to the goods. The trial judge, who sat without a jury, found that the title passed to the defendants at the time when the goods were billed to them and entered judgment for plaintiff. This finding of fact was sustained by the evidence and the judgment was affirmed.

Argued Jan. 26, 1917. Appeals, Nos. 358 and 359, Jan. T., 1916, by defendants, from judgments of C. P. No. 2, Philadelphia Co., Sept. T., 1915, No. 3650, and Dec. T., 1915, No. 696, on judgment for plaintiff, in case of James A. Perkins, to the use of the Bank of Commerce v. Jacob Halpren and Harry Mittleman, trading as Halpren & Mittleman. Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Assumpsit for goods sold and delivered. Before WESSEL, J.

The opinion of the Supreme Court states the facts.

The case was tried without a jury.

The trial judge found for plaintiff and entered judgment on the findings for the sum of $2,232.27.

The court dismissed exceptions to the findings of the trial judge and entered judgment on the findings. Defendants appealed.

*Errors assigned* were in dismissing exceptions to various findings of fact and law and the judgment of the court.

*J. B. Colahan, 3d,* and *Frank P. Prichard,* for appellants.—The sale to defendants was never consummated; the contract was purely executory: Nicholson et al. v. Taylor et al., 31 Pa. 128; Scott v. Wells, 6 W. & S. 357; Lester v. McDowell, 18 Pa. 91; Winslow v. Leonard, 24 Pa. 14; Millard v. Morse, 32 Pa. 506; Diamond Glass Co. v. Ladwig, 33 Pa. Superior Ct. 506; Brown & Co. v. McCaffrey, 3 Pa. Superior Ct. 431.

The plaintiff did not have such title to the goods as would support an action for the price. The right of the bank to the possession of the goods was superior to that of plaintiff: Midvale Steel Works v. Hallgarten & Co., 15 W. N. C. 47; Rickard v. Major, 34 Pa. Superior Ct. 107.

*M. Hampton Todd,* with him *Levi & Mandel,* for appellee.—The contract of sale was completely executed and title to the goods vested in the defendants; they are, therefore, liable for the price: Canadian Bank of Commerce v. Baum & Sons, 187 Pa. 48; City Bank of Buffalo v. Easton Boot and Shoe Co., 187 Pa. 30; Winslow v. Leonard, 24 Pa. 14; Schnebly v. Shirtcliff, 7 Philadelphia 236; Coates's App., 191 Pa. 589; Monticello Distilling Co. v. Dannenhauer, 46 Pa. Superior Ct. 485.

OPINION BY MR. JUSTICE FRAZER, April 16, 1917:

This action, by the assignee of a book account, is for goods alleged to have been sold and delivered by the legal plaintiff to defendants who refused payment, averring the title had not passed nor had there been actual delivery made to them, but on the contrary the goods were sold and delivered to a third person. There were two actions depending upon the same facts by agreement tried together without a jury. The trial judge concluded the testimony ample to establish a sale, and entered judgment for plaintiff.

Plaintiff, an importer of dress goods, entered into an arrangement with defendants, who were jobbers in the same line of merchandise, by which the latter agreed for a commission to guarantee the account of plaintiff at the Philadelphia National Bank, which institution undertook to accept drafts drawn on England and accompanying shipments of goods ordered by plaintiff. Conformable to this arrangement, a letter of credit, signed by the bank and defendants, was forwarded to a foreign merchant, who thereupon shipped the goods, attaching to the bill of lading a draft drawn on the Philadelphia National Bank, and, on arrival of the shipment, the bank accepted and stored the goods in a United States bonded warehouse, in the name of brokers for account of plaintiff. A written acknowledgment, termed a trust receipt, was executed by plaintiff to the bank, in which the former agreed to hold the merchandise in trust as the

property of the bank, with liberty, however, to sell the same for its account, collect the proceeds and deliver the amount received to the bank to be applied against its acceptance of the draft in favor of the foreign merchant. Plaintiff subsequently forwarded to defendants invoices describing the character of the merchandise, and stating the price, terms and date of payment, the price including the duties and carrying charges. Instead of delivering the accounts to the Philadelphia National Bank, in accordance with his agreement under the trust receipt, plaintiff assigned same to the Bank of Commerce, the use-plaintiff, by endorsing on the invoices the following memorandum: "For value received, the above claim is sold, assigned and transferred to Bank of Commerce ......to whom it is payable when due." No claim is made that the Bank of Commerce was not a bona fide purchaser. The money received by Perkins from the use-plaintiff was applied toward the payment of duties, minor incidentals, and drafts, and the balance turned over to the Philadelphia National Bank. Plaintiff's account at the Philadelphia National Bank became in arrears, whereupon the latter directed the warehouseman to hold all goods deposited there on account of plaintiff, subject to its written instructions. Later the goods so held, including those billed to defendants and assigned to the Bank of Commerce, were sold by the Philadelphia National Bank, and the proceeds of the sale applied to the credit of the plaintiff. Defendants refusing to pay for the goods, these actions were brought.

There is evidence to the effect that the method of procuring credit adopted in this case is the usual and customary one in the importing business. Plaintiff testified that, before the letter of credit was procured, he usually obtained from the defendants an order for certain goods, and secured a letter of credit covering their value, and that, in this particular instance, he received a verbal order from defendants to the extent of three thousand pounds of merchandise, whereupon the letter of credit

for that amount was procured, being practically confirmatory of the verbal order for goods. The order as given, included the price and quantity, as appears from the following extract from the testimony: "By the Court: Q.—It was a verbal order for a definite kind of merchandise, to wit, poplins and artificial silk and was of a quantity sufficient in yards to equal 3,000 pounds approximately? A.—Yes, sir." Plaintiff also testified: "All my goods were sold on the basis of that letter of credit. That practically made the sale." This evidence was ample to warrant the finding of an existing order, or agreement, to purchase the goods. The further question remains as to whether there was such actual or constructive delivery sufficient to pass title to the purchaser.

The merchandise, upon reaching port, was immediately delivered to Murphy & Company, and deposited by them in the warehouse for the account of plaintiff, who gave a trust receipt by which he was authorized to make sales of the goods and account to the bank for the proceeds. Plaintiff immediately billed the goods to defendants under date of June 21st and August 9th, at stated terms, by which payment was not required until November 1st and December 1st, following. The status of the goods subsequent to June 21st is indicated by the following testimony: "Q.—What control did Halpren and Mittelman have over that merchandise in the hands of Alexander Murphy? A.—Practically absolutely full control. Q.—Could they go there and get them? A.— Indirectly. Q.—What do you mean by indirectly? A.— When they wanted to withdraw those cases they would give the money for the duty, a check made payable to Alexander Murphy & Company for the withdrawal of those cases. They were put in bond, subject to the payment of the duty...... Q.—Who paid the duty on the goods? A.—Halpren & Mittelman. Q.—How often did they pay duty on goods? A.—Whenever they wanted the case. Q.—To whom did they pay the duty? A.—Alexander Murphy & Co." The goods were billed to include

duty and hauling, and upon defendant desiring to withdraw a portion of the shipment, they gave to plaintiff a sum sufficient to cover the duty, which amount would be credited on the bill, and plaintiff at his expense thereupon removed the goods from the warehouse to defendants' place of business.   Part of the merchandise included in the shipment was delivered in this manner and paid for by defendants.

The articles for which suit was brought were permitted to remain in the warehouse until September, at which time defendants drew a check in payment of the duty; in the meantime, however, the bank notified Murphy & Company not to surrender the goods, except upon its written order.   Defendants were aware at all times that the accounts had been assigned to the Bank of Commerce, notwithstanding the trust agreement, since notice of that fact was endorsed on the face of the invoices sent them, and no objection was made by them to the assignment on account of their guaranty of plaintiff's account at the Philadelphia National Bank.

The court below found from the foregoing facts that the parties intended and did definitely complete the sale at the time the goods were billed to defendants, and the accounts assigned to the Bank of Commerce.   This finding has the force and effect of the verdict of a jury and will not be set aside if there is evidence to support it: Brown, Early & Co. v. Susquehanna Boom Co., 109 Pa. 57;   Com. v. Westinghouse Electric & Mfg. Co., 151 Pa. 265.

Whether or not title passed to defendants in this specific instance depends upon the intention of the parties as indicated by the course of dealing with each other. Actual delivery and payment is not necessary, as merchandise may be sold on credit and without delivery, if the parties so intend.   The rule on the subject was fully stated in Com. v. Hess, 148 Pa. 98, which was a prosecution for selling liquor without a license, the question turning on the time of sale.   In that case, defendant, a

wholesale liquor dealer in the City of Philadelphia, received orders at his place of business from outside the county; upon receipt of such orders the liquors were set apart and charged to the purchaser on defendant's books, the sale being made on credit. The articles purchased were subsequently delivered to the purchaser by defendant, either by wagon or railroad. The dealer was charged with selling liquor without a license in the county in which the purchasers resided, and we there held the sale was made at defendant's place of business, and not in the county of the purchaser. In discussing the legal principles, applicable to such sales, this court said (p. 105) : "As before stated, when the defendant received the orders from his customer, the goods were set apart for the latter, and charged to him. Had the order been accompanied by the cash, and the goods thus set apart, no one would contend that the sale was not complete as between the parties. Can it make any possible difference that the liquors were charged to the purchasers upon the books of the defendant? The giving of a credit was as effective in passing the title as the payment of the money when the order was given. The acceptance of the order, in either case, is effective to pass the title between vendor and vendee. In such case, the vendee has the right of property with the right of possession. Under all the authorities the vendor acts as bailee, and not owner, in carrying or delivering the goods. This is the rule where the rights of creditors, or bona fide purchasers without notice, do not intervene. There is abundant authority for this principle. The general rule is, that it is the contract to sell a chattel, and not payment or delivery, which passes the property : Benjamin on Sales, 357. The rule that the contract of sale passes the property immediately, before payment or change of possession, has been universally recognized in the United States : Id. 329. There may be a bargain and sale of goods sufficient to transfer the title, and thus to support an action for goods bargained and sold, without such transfer of de-

livery as will amount to a transfer of possession: Frazier v. Simmons et al., 139 Mass. 531. 'When the terms of sale are agreed upon, and the bargain is struck, and everything the seller has to do with the goods is complete, the contract of sale, says Chancellor Kent, becomes absolute as between the parties, without actual payment or delivery, and the property, and the risk of accident to the goods, vests in the buyer.' "

In Cope's Est., 191 Pa. 589, it was held that where a customer selected engravings from time to time as invoices of such articles were received, and the selections so made were set apart by the vendor on his premises and charged to the customer's account and subject to his call at any time delivery was desired, the title to the articles passed at the time of their being set aside, even though bills were not rendered in the course of dealing until the prints were actually removed by the customer. We there said (p. 593) : "The conduct of appellants [vendors] was uniform in treating the transaction as a sale. In every case, the selected engravings were marked with their respective prices, separated from the common stock and made accessible to the decedent and Mr. Barr [the vendor's salesman] alone, then charged to him [the decedent], and never thereafter carried into the general stock. The learned auditing judge attached too much importance to the fact that the bills were not rendered until the goods were taken away. There is nothing in that circumstance that is inconsistent with an absolute sale, especially when we consider the uniform course of dealing, which the decided weight of the evidence shows the parties themselves adopted."

A case somewhat similar on its facts is Monticello Distilling Co. v. Dannenhauer, 46 Pa. Superior Ct. 485, where there was an agreement to purchase whiskey "in bond" from a distilling company followed by a transfer of warehouse receipts for the goods and it was held the acceptance by the vendor of notes of the purchaser for the price constituted a complete sale, even though the

goods were subject to a payment of a Federal tax and were never actually delivered to the vendee.

Many other cases sustaining the same principle might be cited. The above, however, are sufficient to illustrate the rule and sustain the conclusion reached by the trial judge on the facts in the present case. The course of dealing between the parties, the method of purchase and subsequent disposition of the merchandise on its arrival in a bonded warehouse, wherein it was set apart subject to withdrawal at the pleasure of defendants, and the actual withdrawal of part, together with the delivery of the invoices, all tend to support the conclusion of the trial judge, and furnish ample foundation to sustain his decision.

The fact that plaintiff failed to transfer the proceeds of sale to the Philadelphia National Bank, conformable to his obligation under the trust receipt to deliver to the latter, has no bearing on the present discussion. The trust receipt authorized plaintiff to sell the merchandise, consequently, an exercise of the power of sale, so far as the purchaser is concerned, divests the title of the bank: Canadian Bank of Commerce v. Baum & Sons, 187 Pa. 48.

While the knowledge of defendants of the misuse of the funds by plaintiff, in violation of the trust agreement, might have prevented them from claiming to be bona fide purchasers for value, in a proceeding by the Philadelphia National Bank to regain possession of the goods (Canadian Bank of Commerce v. Baum & Sons, supra), that bank is not here making claim to any portion of the property, and has apparently received satisfaction of its account.

A motion to quash the appeal was made by plaintiffs. In view of the disposition of the case on its merits consideration of that motion becomes unnecessary.

The judgment of the court below is affirmed.