Williams, Judge,
delivered the opinion:
After the entry of the United States into the World War on April 6, 1917, and prior to the signing of the armistice on November 11, 1918, the United States acquired a tract of land embracing approximately 5,000 acres in Davidson County, Tennessee, and proceeded to erect thereon a plant known as the Old Hickory Powder Plant, for the manufacture and storage of smokeless powder and other war supplies.
*414 On December 22, 1920, the President, through the Secretary of War, who was represented in the transaction by Dwight K. Shurtleff, major of ordnance, United States Army, entered into a contract with the Nashville Industrial Corporation, one of the plaintiffs herein, under the terms of which the Government sold to the said Nashville Industrial Corporation all the property of every kind that was included or pertained to the said Old Hickory Powder Plant. Under the terms of the contract the Government reserved for a period of five years certain property, including a very large quantity of smokeless powder and certain designated buildings and areas of real estate whereon to store, pending future removal therefrom, a large quantity of the said smokeless powder.
Recognizing the great hazard growing out of the storage and removal of the said smokeless powder, the defendant bound itself to save the said Nashville Industrial Corporation and its privies harmless against the loss or damage arising or resulting from the storage and removal of said powder, as follows:
“ The vendor shall hold the purchaser and its privies, harmless against any and all loss or damage which may arise as a result of the storage or removal of any property of the vendor on the premises.”
The Government stored upon the premises approximately 92,000,000 pounds of smokeless powder. This powder was stored principally in buildings inside the reserved area. There were five buildings, however, outside the reserved area in which powder was stored.
On April 1, 1924, the Nashville Industrial Corporation entered into a written contract with the Technical Economist Corporation by the terms of which the Nashville Industrial Corporation agreed to sell, and the Technical Economist Corporation agreed to buy, 85 Werner & Pfieiderer, Type VI, size 15, class B. B., jacketed mixing machines, the said machines being a part of the equipment of the Old Hickory Powder Plant, and as such were sold by the defendant to the said Nashville Industrial Corporation under the terms of the contract of sale aforesaid, dated November 22, 1920.
*415 On August 10, 1924, a fire originating in building No. 8, inside the reserved area, and in which powder was stored, destroyed all the buildings inside the reserved area and also the five buildings in which powder was stored outside the reserved area. The fire spread to and destroyed other buildings and property adjacent thereto, including the buildings in which 56 of the mixing machines sold by the Nashville Industrial Corporation to the Technical Economist Corporation and undelivered at the time of the fire were stored.
The plaintiffs bring this suit to recover the value of the 56 mixing machines destroyed by the said fire.
The defendant contends the plaintiffs should not recover for the following reasons:
(1) The Technical Economist Corporation was not the owner of the machines destroyed by the fire and can not recover their value.
(2) The Nashville Industrial Corporation was the owner of the 56 machines destroyed by the fire and carried fire insurance on them, together with the rest of the property on the premises, and that it has been paid its losses by the insurance companies.
(3) The cause of the fire being unknown, it does not appear that the loss or damage of the plaintiffs or either of them arose as a result of the storage and removal of any property of the Government.
The points raised by the defendant will be considered in the order of their statement.
The first reason assigned by the defendant why plaintiff, the Technical Economist Corporation, can not recover is that it was not the owner of the 56 machines destroyed by fire.
Defendant contends that under the terms of the contract of sale the ownership of the mixing machines did not pass to the Technical Economist Corporation until they were paid for; and that since the fifty-six machines which were destroyed by the fire had not been paid for, and had not passed in the possession of the said corporation, they were still owned by the Nashville Industrial Corporation when destroyed.
*416 The question as to whether the 56 machines destroyed by the fire were at the time of their destruction the property of the Technical Economist Corporation is essentially one of fact to be determined by the specific provisions of the contract. The intention of the parties as to the time when the title is to pass is controlling, and such intention can be ascertained only from the terms of the agreement, as expressed in the language and conduct of the parties, and as applied to known usage and the subject matter. Foster v. Ropes, 11 Mass. 10; Brown v. Sinsboro Cash Store, 102 Ark. 531; Flanders v. Maynard, 58 Ga. 56; Brown v. Herrick, 34 Idaho 171; Hamilton v. Schlitz Brewery Co., 129 Iowa 172; Graff v. Fitch, 58 Ill. 337.
The contract provides:
“ The seller agrees to sell, and the purchaser agrees to purchase, the following described property at prices and on the terms hereinafter set out:
“ Eighty-five (85) Werner & Pfieiderer, Type VI, size 15, class B. B., jacketed, mixing machines at a unit price of six hundred fifty dollars ($650) each, f. o. b. cars Old Hickory, Tennessee, or a total consideration of fifty-five thousand two hundred and fifty dollars ($55,250) for the eighty-five (85) machines.
“ The purchaser agrees to accept at Old Hickory, Tennessee, at least six (6) mixing machines on or before the first of each month, beginning in the month of May, 1924, and continuing with regular monthly installments of at least six (6) machines each month until all of said machines are accepted by the purchaser.
“The seller agrees to deliver to the purchaser six (6) mixing machines, or as many more as the purchaser requests, in monthly installments as above stated.”
The contract further provides:
“ The purchaser agrees to pay the sum of $650 for each machine taken but in no event is less than $4,000 to be paid during any one month whether any machines are taken or not.
“ The purchaser has this day deposited with the seller the rsum of seven thousand two hundred fifty dollars ($7,250) in cash, the receipt of which is hereby acknowledged by the .seller. It is agreed that if the purchaser shall fail to carry out this contract by not receiving and paying for said mixing machines according to the terms above set forth that *417 the seller will suffer damages to the extent of seven thousand two hundred and fifty dollars ($7,250) and accordingly * * * said sum of seven thousand two hundred fifty dollars ($7,250) which shall be treated and considered as liquidated damages in the event the purchaser breaches said contract as aforesaid.
“A failure to make monthly payments according to the terms and provisions aforesaid shall constitute a breach of this contract and if such breach shall continue for a period of thirty days, the seller may at its option declare the entire contract terminated and apply the amount of said deposit as liquidated damages for such breach and retain all machines not paid for in full.”
The law is well settled in accordance with the rules of the sales act, both where that act is in force, and under the common law, that property is presumed t<? pass when the contract is made if the goods are identified, and nothing remains to be done other than delivery of the goods and payment of the price. Williston on Sales (2d ed.) Vol. 1, section 264, p. 530. In re Clairfield Lumber Co., 194 Fed. 181; Hammer v. United States, 249 Fed. 336; Elgin v. Barker, 106 Ark. 482, 153 S. W. 598; Bill v. Fuller, 146 Calif. 50, 79 Pac. 592; Perkins v. Halpren, 257 Pa. 402, 101 Atl. 741; Hatch v. Oil Co., 100 U. S. 124; Tarling v. Baxter, 6 B. & C. 360.
This rule is clearly announced in Tarling v. Baxter, supra:
“ Now, in the case of a sale of goods, if nothing remains to be done on the part of the seller, as between him and the buyer before the thing purchased is to be delivered, the property in the goods immediately passes to the buyer, and that in the price to the seller; but if any act remains to be done on the part of the seller, then the property does not pass until that act has been done.”
In Hatch v. Oil Co., supra, the court said:
“ Where the specific goods to which the contract is to attach are not specified, the ordinary conclusion is that the parties only contemplated an executory agreement. Reported cases illustrate and confirm that proposition, and many show that where the goods to be transferred are clearly specified and the terms of sale, including the price, are explicitly given, the property, as between the parties, passes to the buyer even without actual payment or deliv *418 ery, 2 Kent Com. (12th ed.) 492; Tome v. Dubois, 6 Wall. 548, 554; Carpenter v. Hale, 8 Gray (Mass.) 157; Martineau v. Kitching, Law Rep. 7 Q. B. 436, 449, Story, Sales (4th ed.), sec. 300.
“ Standard authorities also show that where there is no manifestation of intention, except what arises from the terms of sale, the presumption is, if the thing to be sold is specified and it is ready for the immediate delivery, that the contract is an actual sale, unless there is something in the subject matter or attendant circumstances to indicate a different intention. Well-founded doubt upon that subject can not be entertained if the terms of bargain and sale, including the price, are explicit * * *.
$ $ ‡ ‡ ‡
“ Modern decisions of the most recent date support the proposition that a contract for the sale of specific ascertained goods vests the property immediately in the buyer, and that it gives to the seller a right to the price, unless it is shown that such was not the intention of the parties. Gilmore v. Supple, 11 Moore P. C. C. 551; Benjamin, Sales (2d ed.), 280; Dunlop v. Lambert, 6 Cl. & Fin. 600; Calcutta Co. v. DeMattos, 32 Law J. Rep. N. S. Q. B. 322-338.”
The Uniform Sales Law of Tennessee, Title 14, Chapter B, Part I, Baldwin’s Cumulative Code Supplement, section 3118 a-86, rule 1, provides:
“ Where there is an unconditional contract to sell specific goods, in a deliverable state, the property in the goods passes to the buyer when the contract is made and it Is immaterial whether the time of payment, or the time of delivery, or both be postponed.”
The contract we are considering relates to the sale and purchase of specific goods. The price is explicitly stated. The goods to be transferred are in a deliverable state, nothing remaining to be done to them prior to their delivery.
We think the agreement was an unconditional contract of sale and that the title to the property sold vested in the vendee, the Technical Economist Corporation, upon the execution of the contract. There is nothing in any of the provisions of the contract which shows a contrary intent of the parties. The provision that “ the purchaser assumes all risk from fire or explosion, and it is agreed that insurance shall be carried on the said property undelivered at the expense of the purchaser, and loss clause attached to the *419 policies payable to the seller as his interest may appear ” clearly recognizes the vendee’s ownership of the undelivered^ machines. The vendee’s ownership of the property is fur--ther recognized by the provision, “ the seller agrees that it will be responsible for the safe custody of the mixers and for any loss or damage by its own negligence, but not otherwise.” These provisions are inconsistent with the defendant’s theory that the ownership of the property sold remained in the seller, title passing to the purchaser in each machine upon the payment of the purchase price.
Under the rule laid down by the decisions above cited, as well as by the plain and unqualified, language of the Tennessee uniform sales law, the fact that the time of payment, or the time of delivery, or both be postponed, is immaterial as to the immediate passing of title to the buyer in goods sold under an unconditional contract of sale of specific goods in a deliverable state.
The defendant’s contention that the Technical Economist Corporation-was not the owner of the 56 mixing machines destroyed by fire can not be sustained.
The defendant’s second point is that the Nashville Industrial Corporation was the owner of the 56 machines destroyed by fire, and that it carried insurance on them, together with the rest of its property on the premises, and that it has been paid for its loss by the insurance.
Our decision that the Technical Economist Corporation was the owner of the machines destroyed by fire disposes of the contention that they were the property of the Nashville corporation.
We have found as a fact that the Nashville Industrial Corporation (Finding XIV) did not have any insurance on the 56 machines destroyed by the fire, and that the said corporation did not include the said machines in the itemized statement made by it to the insurance companies of its losses sustained by reason of the fire, and that the value of these machines constituted no part of the sum paid to the said corporation by the insurance companies in settlement of its losses resulting from the fire.
*420 This court in Nashville Industrial Corporation, etc., v. United States, 69 C. Cls. 443, 457, passed directly upon the third point raised by the defendant in this case:
“ The cause of the fire has not been definitely established. It started, however, in a building in which powder was stored, and which was under the absolute custody and control of the Government. The reserved area, within which building No. 8 was located, was surrounded by an iron fence six feet high with two barbed wires on the top thereof. The area was patrolled day and night by employees of the Government. No one connected with the plaintiff company was allowed inside this area or inside any of the buildings outside of the area where powder was stored except on a special pass or when accompanied by an official of the Government. No one connected with the plaintiff corporation had been in or around the building in which the fire originated or other buildings where powder was stored for several weeks previous to the fire.
$$$$$$$
“ It [the Government] had stored the building with powder, and there is not the slightest doubt that the loss sustained by the plaintiff was the direct result of such storage of powder by the defendant.”
The facts in the instant case applicable to the point now raised by the defendant being precisely the same as those considered in Nashville Industrial Corporation, etc., v. United States, supra, the court finds no reason for changing or modifying the views therein expressed.
The fire originated in a building in which the defendant had stored powder. The material question here is not what caused the fire, the plaintiffs being blameless in that regard, hut whether the loss sustained by the plaintiffs by reason of the fire arises as a result of the storage of such powder on the premises.
At the time of the fire there were 52,000,000 pounds of powder stored in the buildings inside and outside the reserved area. It is not necessary to draw on the imagination to know that after this powder was once ignited, from any cause, the resulting conflagration would be uncontrollable until all buildings containing powder and those adjacent thereto were destroyed. This is exactly what happened. *421 The fire spread from the buildings inside the reserved area to buildings outside that area in which powder was stored and was communicated to other buildings in the neighborhood, in which no powder was stored. About one hundred and fifty buildings in all were destroyed, including those in which the 56 mixing machines were stored.
We think the plaintiffs’ loss which they seek to recover in this suit resulted from the storage of powder on the premises.
Under the provisions in the contract of November 22, 1920, between the Nashville Industrial Corporation and the defendant, in which the defendant covenanted to “ hold the Nashville Industrial Corporation and its privies harmless against all loss or damage which may arise as a result of the storage or removal of the property of the vendor on the premises,” the plaintiffs are entitled to recover the value of the 56 mixing machines destroyed by the fire on August 20, 1924.
The amount of their loss has been fixed by the court in the findings to be the sum of $56,000.00. Judgment for that amount is therefore awarded. It is so ordered.
LittletoN, Judge; Gkeen, Judge; and Booth, Ghief Justice, concur.
Whalet, Judge, did not hear this case and took no part in its decision.