BROWN & HACKNEY, INC., v. LOVELESS.

Opinion delivered March 13, 1922.

1. SALES—NECESSITY OF DELIVERY.—The remedy of one who contracts to buy chattels which were never delivered is an action for breach of contract, and not replevin.

2. REPLEVIN—REQUISITES.—Replevin cannot be maintained without showing a general or special ownership of the property in the plaintiff, together with the right of immediate possession.

3. SALES—NECESSITY OF DELIVERY.—A delivery, either actual or constructive, is essential to the consummation of a sale of chattels, title not passing until delivery.

4. Sales—question for jury.—In an action involving the title to chattels, whether there had been delivery under a contract of sale *held* under the evidence to be a question for the jury.

5. Appeal and error—harmless error.—Refusal of a continuance to an intervener after plaintiff had been permitted to amend his complaint so as to ask damages against such intervener was harmless where no judgment for damages was rendered against the intervener.

6. Continuance—requisites of motion.—A motion for continuance on the ground of surprise by an amended pleading should show wherein the movant was surprised by such amendment.

Appeal from White Circuit Court, *J. M. Jackson,* Judge; affirmed.

### STATEMENT OF FACTS.

This was an action in replevin by W. J. Loveless and A. C. McGregor, doing business under the firm name of W. J. Loveless Veneer Company, against J. B. Bridgeman, to recover 30,000 feet of gum and cypress logs. The defendant denied ownership of the logs in the plaintiffs, and averred ownership in himself.

Brown & Hackney, Inc., filed an interplea in which it claimed that it had title to the 30,000 feet of gum and cypress logs in question, and was entitled to the possession thereof.

After all the parties had announced ready for trial, the plaintiffs, through their attorneys, obtained leave of the court to file a cross-complaint against Brown & Hackney, Inc., for $400.

According to the testimony of W. J. Loveless, he lived at Cotton Plant, Ark., and he and Asa McGregor ran a veneer mill in the name of Loveless Veneer Company. The Loveless Veneer Company bought the timber on 80 acres of land in White County, Ark., and paid $600 for it. The firm employed the defendant, Bridgeman, to cut the timber for it under a verbal contract to give him $16 per thousand for cutting, hauling and loading the timber on the cars at Worden's spur. The plaintiffs did not sell, or authorize any one else to sell, the timber to Bridgeman. The plaintiffs advanced Bridgeman $825 to

pay for labor in getting out the logs. Bridgeman shipped about 30,000 feet of logs to Brown & Hackney, Inc., and paid the plaintiffs $1,000 of the purchase price he received for the logs from Brown & Hackney, Inc. The plaintiffs did not know anything about the sale, and did not authorize Bridgeman to make the sale. After the replevin suit was instituted against Bridgeman by the plaintiffs, the latter took possession of the logs at Worden's spur.

According to the testimony of J. B. Bridgeman, he first learned of a tract of timber being for sale, and asked W. J. Loveless to furnish him the money with which to buy it. Loveless sent an agent to look over the timber, and, after the agent reported to him his estimate of the amount of timber, Loveless told Bridgeman that he would furnish the money with which to buy the timber, provided the deed was made to the Loveless Veneer Company, and that they would pay Bridgeman $40 per thousand for the logs loaded on the cars until they got their money back. After Bridgeman had cut some of the timber, an agent of the plaintiffs came up and examined the logs. He told Bridgeman that the logs were not good veneer logs, and authorized him to sell the logs to some one else. There were something over 20,000 feet of logs cut at that time. Bridgeman, by a verbal contract, sold to Brown & Hackney, Inc., 52,000 feet of logs off of the 80 acres of land in question for $40 per thousand. He delivered to Brown & Hackney, Inc., about 30,000 feet of logs and received pay for them. He then paid the plaintiffs $1,000. This left about 23,000 feet of logs at the spur, and this amount of logs was taken possession of by the plaintiffs in the replevin suit before Bridgeman delivered them to Brown & Hackney, Inc. Bridgeman told Loveless, when he sent him the $1,000, that as soon as he could load out the logs he would send him the balance of the money. Loveless accepted the check for the $1,000 and said that that was all right. Loveless gave Bridgeman permission to sell the logs to Brown & Hackney, Inc.

The evidence shows that the logs have become rotten and are worthless now. They were seized · by the plaintiffs under their writ of replevin.

The jury returned a verdict as follows: "We the jury find for the plaintiffs for the possession of the logs in controversy, and the interveners are not liable for damages asked for by the plaintiffs."

Judgment was accordingly entered in favor of the plaintiffs against the defendant, Bridgeman, for the possession of 30,000 feet of gum and cypress logs.

It was further ordered by the court that the cause be dismissed as to Brown & Hackney, Inc. Brown & Hackney, Inc., alone has appealed to this court.

*Brundidge & Neelly,* for appellant.

1. There was ample time in which plaintiffs might have filed their cross-complaint and put appellant on notice, from the time it filed its intervention to the time the case was called for trial. The filing of the cross-complaint after the jury was impaneled came in the nature of a surprise and appellant was entitled to a continuance. 67 Ark. 144; 75 *Id.* 468; 103 *Id.* 83.

2. Instructions numbered 2 and 5, upon the question of ratification, requested by the intervener, ought to have been given. Whether the plaintiffs authorized the sale or not, after Bridgman told them he had sold it and they accepted the money as part payment, that was a ratification. 124 Ark. 364; 137 *Id.* 534; 54 *Id.* 220; 96 *Id.* 510.

*John E. Miller* and *C. E. Yingling,* for appellees.

1. There is no showing in the record that there was any abuse of discretion in refusing the continuance. 93 Ark. 119, 123; 40 *Id.* 114; 94 *Id.* 430. Neither does it appear that any prejudice resulted. 112 Ark. 507; 137 *Id.* 387; 88 *Id.* 185; 113 *Id.* 83. If error was committed, it was cured by the verdict. 72 Ark. 316; 101 *Id.* 424; 95 *Id.* 209.

2. Appellant's requested instructions 2 and 5 were not justified by the facts in the case. The suit does not involve the logs actually purchased by appellant and

for which it paid Bridgeman, but only the ownership of the logs which the latter had not succeeded in delivering to any one. On the question of ratification, see 21 R. C. L. 923, § 101; 78 N. J. L. 637; 76 Atl. 1024; 136 Am. St. 627; 107 Va. 368; 13 Ann. Cas. 277; 66 Ark. 10; 55 *Id.* 423; 21 R. C. L. 928; § 106; 40 La. A., 87; 8 Am. St. 512; Ann. Cas. 1916-A, 183

HART, J., (after stating the facts). The court submitted to the jury the issue of fact between the plaintiffs and the defendant, Bridgeman, as to the ownership of the logs. The jury returned a verdict for the plaintiffs, and, no appeal having been taken from the judgment rendered, the issue of ownership of the logs as between the plaintiffs and Bridgeman is not involved in this appeal.

Counsel for Brown & Hackney, Inc., assign as error the refusal of the court to give instructions number 2 and 5, which are as follows:

"2. The jury are instructed that if the plaintiffs, or either of them, knew of the sale of said logs made by Bridgeman to Brown & Hackney, Inc., and accepted the payments made by them, then they would be held to have ratified said sale, and your verdict will be for the interveners for the value of logs in controversy."

"5. The jury are instructed that if you find from the testimony in this case that the defendant, Bridgeman, notified plaintiffs, or either of them, that he had sold logs from the land in controversy to the Brown & Hackney Company, and that he had received $1,000 in payment of same, and that he turned this money over to said plaintiff, then this would be a ratification of said sale, and said plaintiff would be estopped from claiming said logs."

There was no error in refusing to give these instructions. It will be noted that instruction number two tells the jury as a matter of law that Brown & Hackney, Inc., are entitled to recover the value of the logs if it should find that plaintiffs ratified the sale. This was error. According to the testimony of Bridgeman,

about 23,000 feet of logs in controversy were never delivered to Brown & Hackney, Inc. It is true he made a verbal agreement to sell that company 52,000 feet of logs, but it is fairly inferable from his testimony that the logs were to be paid for as delivered to it. Bridgeman delivered to Brown & Hackney, Inc., 30,000 feet of logs, and it paid him for that amount. He testified that the balance would be paid when the logs should be delivered. The balance of the logs were taken from Bridgeman in the replevin suit before they were delivered to Brown & Hackney, Inc. Bridgeman states positively that these logs were never delivered to Brown & Hackney, Inc. Hence the court would have erred in telling the jury that the interveners were entitled to recover the value of the logs if the jury should find that the plaintiffs had ratified the sale of the logs by Bridgeman to them.

If the plaintiffs themselves had made a contract direct with Brown & Hackney, Inc., to sell it 52,000 feet of logs at $40 per thousand, payment to be made as the logs were delivered, and after delivering 30,000 feet of the logs, had refused to deliver the balance, Brown & Hackney, Inc., could not have recovered the logs or their value from the plaintiffs. Replevin cannot be maintained without showing a general or special ownership of the property in the plaintiff, together with the right of immediate possession. A delivery, either actual or constructive, is essential to the consummation of a sale of chattels, and the title does not pass until there has been a delivery. *Hodges* v. *Nall,* 66 Ark. 135; *Deutsch* v. *Dunham,* 72 Ark. 141; *Georgia Marble Finishing Works* v. *Minor,* 128 Ark. 124, and *Sherrill Hardwood Lbr. Co.* v. *H. D. Glass Lbr. Co.,* 151 Ark. 513.

As we have already seen, Bridgeman testified that the logs in question had never been delivered to Brown & Hackney, Inc., and this raised an issue of fact to be submitted to the jury on the question of whether the title to the logs had passed to Brown & Hackney, Inc.,

under its executory contract of purchase entered into with Bridgeman. It would have been error for the court to have told the jury as a matter of law that the intervener could recover the value of the logs in controversy, or that the plaintiffs would be estopped from claiming the logs if they had never in fact been delivered to Brown & Hackney, Inc. In case there was no delivery so as to consummate the sale, the remedy of Brown & Hackney, Inc., would have been a suit to recover damages on account of the breach of its contract, and it could not maintain a suit for the conversion of the property or the possession of it. The distinction between a sale which transfers the ownership and an executory contract to sell, not consummated by delivery, which gives but an action for the breach of it, is a broad one and must not be confused.

It is also insisted that the court erred in refusing to grant Brown & Hackney, Inc., a continuance in the cause. The ground upon which this assignment of error is predicated is that the plaintiffs were permitted to amend their complaint at the beginning of the trial so as to ask damages against Brown & Hackney, Inc., for $400. This assignment of error is not well taken, for two reasons. In the first place, no judgment was rendered against Brown & Hackney, Inc., for damages, and we cannot see how any prejudice could have resulted to it in the premises. Again, it is not possible for us to say that there was error in refusing to grant the continuance on the ground of surprise without counsel had set out the particular respect in which they were surprised. We cannot take the word of a party that surprise would result, but he should show to us, in substance at least, in what the surprise consisted, before we can convict the court below of error. It was not done so here, and the refusal to grant the motion for a continuance in this form was not error. The new issue in fact only related to the

number of logs which had been cut and stacked at Worden's spur; and no new or additional testimony was necessary.

We find no reversible error in the record, and the judgment will be affirmed.