NATIONAL BANK OF ARKANSAS *v.* INTERSTATE PACKING COMPANY.

Opinion delivered November 7, 1927.

1. SALES—RIGHT OF CONDITIONAL SELLER.—One who retains the title to property sold until payment of the purchase money may retake possession of it at any time after condition broken, whether from the original buyer or from any person to whom it has been transferred, unless he consented to the transfer or sale.

2. EXECUTORS AND ADMINISTRATORS—RIGHT TO RETAKE PROPERTY CONDITIONALLY SOLD.—The title to merchandise conditionally sold remained in the seller, who had a right, upon default in payment of drafts, to retake it from the deceased buyer's administrator.

3. SALES—WHEN CONDITIONAL SALE BECOMES ABSOLUTE.—One who makes a conditional sale of property may treat the sale as absolute by suing for the debt.

4. EXECUTORS AND ADMINISTRATORS—CONVERSION OF PROPERTY CONDITIONALLY SOLD.—Where a seller sold merchandise under a contract providing that the title should remain in the seller until the payment of certain drafts, and the buyer died before the drafts were paid, and his administrator sold the merchandise, his acts amounted to conversion of the property, and the seller was entitled to the proceeds of the sale in the administrator's hands as representing the property belonging to the seller.

Appeal from Jefferson Circuit Court; *T. G. Parham,* Judge; affirmed.

*Rowell & Alexander,* for appellant.

*Bridges & McGaughy,* for appellee.

MEHAFFY, J.   The Interstate Packing Company is a corporation of Winona, Minnesota, and C. A. Linaker was a merchant of Pine Bluff, Arkansas.   On the 21st day of February, 1925, they entered into the following agreement:

"Agreement made February 21, 1925, between Interstate Packing Company, a corporation, of Winona, Minnesota, party of the first part, herein called the seller, and C. A. Linaker, of Pine Bluff, Arkansas, party of the second part, herein called the buyer.

"The seller agrees to and does hereby sell to the buyer, and the buyer agrees to and does hereby buy from the seller, packinghouse products made by the seller, and consisting of smoked and dry salt meats, fresh meats, lard, pickled goods and offal, in the amounts and upon terms and conditions and for prices as hereinafter set forth.

"The period of this contract is and shall be for one year from date hereof, and it is agreed that the buyer shall take and the seller shall furnish hereunder not less than two carloads of said packinghouse products during each month of said period. The buyer agrees that he will each week advise the seller, in due time for shipment, of the variety and amount of each of said products to be shipped by the seller to him.

"Delivery by the seller to the carrier at Winona, Minnesota, of products sold hereunder, consigned to the buyer, shall be delivered to the buyer, but the seller shall pay freight from Winona, Minnesota, to Pine Bluff, Arkansas.

"The price which the buyer is to pay and the seller is to receive for the merchandise aforesaid is to be the current price therefor, based on Chicago market, as fixed by the seller to its customers generally each week, with freight added (subject to discount as hereinafter provided), and the seller shall each week advise the buyer of such prices, which shall control and apply to all shipments hereunder until a change in price by the seller and advice thereof to the buyer, provided that the seller shall have the right to advance or reduce the price of such merchandise at any time by wire in accordance with any sudden or unusual fluctuation in the Chicago market. From the prices above specified the buyer shall be entitled, as to all goods shipped hereunder for which he pays the

drafts at maturity, to discounts as follows, which shall be credited to the buyer by the seller as and when the drafts against such shipments are paid, and the seller will, on or about the first day of each month, send buyer a statement of discount credits for the foregoing month: Two per cent. on smoked and dry salt meats and lard; five per cent. on pickled goods; fifty cents per hundred pounds on fresh meats and offal.

"When and as merchandise is shipped hereunder the seller will make on the buyer one draft for one-half the price of each shipment, payable in 15 days from date, and one draft for one-half such price, payable in 30 days from date, to which drafts the seller will attach invoice and bill of lading, the same to be transmitted and presented to buyer through usual banking channels, and buyer agrees to accept said drafts upon presentation and to pay the same at maturity, and title to merchandise shipped shall not pass from seller to buyer until payments of drafts, as aforesaid. Upon acceptance of such drafts, bill of lading is to be surrendered to buyer.

"Any failure on the part of the buyer to order and accept at least two carloads per month of said merchandise, or to accept or to pay any draft drawn as aforesaid, may, at the option of the seller, be taken to be a repudiation of this contract, and the seller may, if it so elect, cancel this contract as for breach thereof on the part of the buyer."

Under this agreement goods were shipped by appellee to C. A. Linaker, and drafts were sent.

Linaker died on the 24th day of August, 1925, and at that time drafts were due and unpaid and several thousand dollars worth of the products shipped by appellee to Linaker were on hand.

The Interstate Packing Company filed suit in the chancery court of Jefferson County, Arkansas, on December 16, 1925, alleging that the National Bank of Arkansas, a corporation organized and existing as a national bank under the laws of the United States, and George H. Linaker were appointed by the probate court of Jefferson

County administrators of the estate of C. A. Linaker, deceased; that, on August 25, plaintiff was the owner of certain meats which were in the former place of business of C. A. Linaker in Pine Bluff, Arkansas, giving a detailed description of the meats and the value of each item, the total value of which was $5,557.97. Plaintiffs alleged that the administrators and the National Bank of Arkansas and George H. Linaker individually took possession of the meats, which were of the value of $5,557.97, and that the National Bank of Arkansas and George H. Linaker received $5,557.97 for said goods, and that the identical money which was the purchase price of said goods is now in the hands of said defendants.

The prayer was for judgment against the administrators and against them as individuals for the above amount, with interest and cost, and they asked that a trust be impressed upon the funds in the hands of said defendants in favor of the plaintiffs to the amount of judgment prayed. And that the defendants be ordered to pay the same over to plaintiff.

The defendants answered, denying the material allegations in plaintiff's complaint, and alleged that all of the property taken over by them as administrators of the estate of Linaker, deceased, was the actual property of said estate, and has been handled by them in due course of administration. That, if the plaintiff has any claim against the estate of C. A. Linaker, it should be filed with these defendants as administrators of said estate as a claim against said estate. Defendants also filed motion for bond for cost, alleging that plaintiff was a foreign corporation. Defendants also filed a demurrer, and the court treated it as a motion to transfer to the circuit court, and transferred the cause to the circuit court of Jefferson County.

The plaintiff, on November 27, 1926, filed bond for cost.

The court made the following findings of fact:

"That, on the 21st day of February, 1925, the plaintiff, Interstate Packing Company, a corporation, of Win-

ona, Minnesota, engaged in the business of packing and selling packinghouse products, entered into a contract with one C. A. Linaker, of Pine Bluff, Arkansas, wherein and whereby the Interstate Packing Company contracted to sell to the said C. A. Linaker certain packinghouse products, said contract being set forth as an exhibit to the deposition of P. A. Jacobson.

"That, under the terms of said contract, merchandise shipped thereunder was delivered to the said C. A. Linaker only upon the acceptance of two drafts for each carload of merchandise shipped, one draft evidencing one-half of the estimated purchase price of the car, being payable in fifteen days from date, and the other draft for one-half of the purchase price of said car, being payable in thirty days from date. That, upon the acceptance of said drafts, the bill of lading evidencing the shipment was delivered to the said C. A. Linaker, who then resold same in the course of his business, but said goods were not listed upon his books as assets of C. A. Linaker, nor was the debt therefor listed as a liability of C. A. Linaker, until after same had been resold. That, by the terms of said contract, the title to said merchandise did not pass from the Interstate Packing Company to the said C. A. Linaker until the payment of said drafts.

"That, on the 24th day of July, 1925, the Interstate Packing Company shipped to said C. A. Linaker one carload of merchandise for the estimated price of $5,210.45, drawing two drafts, one in the sum of $2,605.22 and the other for the sum of $2,605.23. Both of said drafts were accepted by C. A. Linaker upon presentation, one being accepted for payment due August 10, 1925, and the other for payment due August 23, 1925. The first of said drafts, maturing August 10, 1925, was duly paid. The second of said drafts, maturing August 23, 1925, has never been paid.

"That, on the 11th day of August, 1925, the Interstate Packing Company shipped another carload of merchandise to the said C. A. Linaker for the estimated price of $7,180.88, drawing two drafts, each for the sum of

$3,590.44, which, upon presentation to the said C. A. Linaker, were accepted for payment due August 26, 1925, and September 10, 1925, respectively. Neither of these drafts have ever been paid. That, upon the acceptance of the drafts hereinabove mentioned, both carloads of merchandise were delivered to C. A. Linaker, who placed said merchandise in his wareroom and proceeded to sell from the same in due course of business, carrying same upon his books in the manner above noted. That all of the goods in said two cars were branded and kept physically separate from any other goods in the warehouse of Linaker.

"That, on the 24th day of August, 1925, one day after default in the payment of the draft for $2,605.23, which was due and payable August 23, 1925, C. A. Linaker died intestate in Jefferson County, Arkansas. That thereafter, on August 27, 1925, the National Bank of Arkansas and G. H. Linaker, defendants herein, were duly appointed joint administrators of the estate of the said C. A. Linaker, deceased, and qualified as such. That, at the time of their appointment and qualification, there was in the wareroom of the said C. A. Linaker merchandise included in the above shipments of the agreed value of $5,748.28. That the National Bank of Arkansas and G. H. Linaker, as administrators of the estate of C. A. Linaker, deceased, in good faith took possession of said merchandise immediately, and procured an order from the probate court authorizing them to sell said property as perishable property belonging to the estate of C. A. Linaker, deceased, and proceeded forthwith to sell the same, for which they received the sum of $5,748.28.

"The court further finds that, on the 24th day of August, 1925, a few hours after the death of C. A. Linaker, one M. O. Moore, who had been in the employ of C. A. Linaker, immediately wired the Interstate Packing Company that C. A. Linaker was dead. That, within the next two or three days, and prior to the actual sale of said merchandise, telegrams were interchanged between the Interstate Packing Company and the said

M. O. Moore, which were exhibited to the administrators prior to the sale, from which it appeared that the Interstate Packing Company was asserting a claim of ownership to said merchandise. That, other than sending these telegrams to the said M. O. Moore, the Interstate Packing Company made no effort, prior to the sale, to assert its rights, instituted no legal proceedings to recover said property, and made no formal demand on the administrators for the possession thereof, except in so far as was contained in a telegram to M. O. Moore, marked Exhibit E to his deposition, directing him to immediately sell said property for the account of the Interstate Packing Company, and not confuse same with the Linaker estate. That, during the time said telegrams were interchanged, the said M. O. Moore was not in the employ of the Interstate Packing Company, nor was he in the employ of the administrators, but he subsequently assisted in making the inventory of the merchandise and assisted the administrator in selling and disposing of said merchandise. That the proceeds of said sale have at all times since then been in the possession of the administrators, who have held the same, claiming said funds as a part of the general assets of the estate of C. A. Linaker, deceased.''

There were no exceptions filed to the finding of facts, but the defendants excepted to the conclusions of law. And their first contention is that the court erred in holding that, upon the default in the payment of the draft maturing August 23, 1925, and the draft maturing August 26, 1925, the Interstate Packing Company was the owner of and entitled to the immediate possession of the merchandise taken over by the defendants.

The contract itself expressly provides: ''Title to merchandise shipped shall not pass from seller to buyer until payments of draft as aforesaid.'' It therefore appears that the parties contracted that the seller should retain title, and the title was therefore in the seller, according to the express agreement of the parties. Even under a sale without any condition, where the seller does

not retain the title, he has a right, as long as the merchandise is in the possession of the buyer, to bring suit and create a lien, and, when this is done, this lien is superior to any lien or claim thereafter created. But, where one retains title to the property sold, he may take possession of it at any time after condition broken, whether from the original buyer or from any person to whom it has been transferred, unless the seller has consented to the transfer or sale.

This court has often held that, in conditional sales, although the seller has the right to retake the property whenever there is a failure to pay for it, or when there is a violation of the contract which gives him a right to take possession, still the buyer has such an interest in the property, even though the sale is conditional, as that he may sell it or mortgage it. His sale or mortgage of the property, however, does not defeat the right of the seller to retake the property, unless, as we have said, the seller has agreed to the sale or mortgage.

Counsel relies on the case of *Roach* v. *Whitfield*, 94 Ark. 448, 127 S. W. 722, 140 Am. St. Rep. 131. In that case there was a conflict in the testimony, that on behalf of the appellant tending to prove that the sale was absolute and not on consignment, and was to be disposed of by the consignee as their agents. The testimony on behalf of the appellee tended to prove that she shipped the goods under a consignment, and she had a written consignment agreement that, in such cases, she retain title for the purpose of securing the purchase price only. The appellant asked the court to instruct the jury, among other things, that, even if they found from the evidence that the goods were shipped on consignment and the title thereto was retained and that such goods were, without fault of defendants, destroyed by fire, yet, if they further found from the evidence that such goods were delivered to the defendants at a fixed price, to be by them retailed in due course of trade as merchandise, at any price fixed by them, and that title was retained by the plaintiffs solely as security for the purchase price, and that, upon the pay-

ment of purchase price, title was to vest in the defendants, then the loss must fall on the defendants. The court refused to give that instruction, and the court held that that was error, and held that, under the facts in that case, the title was retained in appellant only for the purpose of security, but for no other purpose. The court stated further that the facts detailed tended to show that, when the goods consigned to appellees were received by them, they became the principal debtors to appellant. The title passed immediately to them on the payment of the purchase price. This is a statement by the court of what the facts in the particular case showed, and, these facts being true, the court said at least appellant was entitled to an instruction on the specific facts as set forth in the above testimony, telling them that, if they found the facts to be as recited, the loss must fall on appellees.

We do not think that the above case is controlling here. In fact, the facts are not similar. In the present case, as we have already said, the contract entered into by the parties expressly provided that the seller should retain the title. Of course it will not be contended that appellee, if the buyer had lived, could not, at any time after default was made, have taken possession of the goods. Indeed, the appellants themselves say that, if it was a conditional sale, appellee would have had to repossess himself by replevin of such merchandise as was in the possession of Linaker, or would have had to sue for the unpaid purchase money and attach such merchandise, if any, remaining in his possession. In other words, if it were a conditional sale and any of the property was in the possession of the buyer, the seller could bring replevin and take the property, or he could elect to make the sale absolute and attach the property in the hands of the buyer. This latter course he could pursue if it had been an unconditional sale, as long as the property or any portion of it was in the hands of the vendee.

We think a case more nearly like this than the case above referred to is the case of *Bryant* v. *Swafford Bros.*, 214 U. S. 279, 29 S. Ct. 614, 53 L. ed. 997. In that case the

court said: "We think it clear that the contract under which the goods were delivered to the Newtons was one of conditional sale." Citing cases and continuing, the court said: "There is nothing in the nature of this contract which would forbid the parties from entering into it if it was valid by the laws of the State where made."

The above case was in bankruptcy, and the court said that, in bankruptcy, the construction and validity of such a contract must be determined by the local laws of the State, and that such a contract is a conditional sale, and valid without record in Arkansas, and it was further stated that the trustee had no higher rights than the bankrupt.

If this had been an unconditional sale of the merchandise, and the buyer had died and his administrators had taken charge of it, the seller could not have created a lien, because, under such circumstances, he only has a right to create a lien while in the hands of the vendee. But in this case the title to the merchandise was in the seller, and he had a right, of course, upon default, to retake it from the buyer. And the administrators in this case have no greater right than Linaker himself had. Moreover, the appellee wired, and, before there was any sale of the property, the administrators were advised of the claim of ownership by the seller, and they also knew that this merchandise was kept separate from the other merchandise of the buyer.

This case is distinguished from the case in 94 Ark. also, not only because the seller retained title and reserved the right upon default to declare a breach of the contract, but also because in this case the buyer not only did not keep these goods with his other merchandise, but he did not charge himself, but, as Moore testified, later kept the stock physically separate and listed the stock as assets of the packing company, and charged the debt as a liability only upon the sale of it. That Linaker considered it a consignment. Linaker certainly regarded it as a conditional sale. If he did not so regard it, there would be no reason for him keeping the stock separate and no rea-

son for his keeping the books in the manner in which he did.

"Under a conditional sale, by the terms of which the seller reserves the title to the goods until payment of the price, no property passes to the buyer, notwithstanding the delivery, until performance of the condition as to payment. Nevertheless the buyer acquires a defeasible interest in the property, which, before default, he may sell or mortgage, and which may be attached by his creditors. So, too, he may maintain an action against one who wrongfully invades his possession. The seller may sell or mortgage his interest in the goods or in the contract, or it may be attached by his creditors. The provision that title shall remain in the seller is, however, for his benefit, and he may elect to treat the sale as absolute and as passing the property in the goods to the buyer." 35 Cyc. 667.

The seller treats the sale as absolute when, instead of bringing suit for the possession of the property, he brings a suit for the debt and attaches the property. He can pursue this remedy or the other, because the retaining title to the property is for his benefit, and he may waive it if he wishes to do so. But, where property is sold and the seller retains title until paid for, such property as remains in his possession may be taken at any time if it is not paid for, and, where the property is kept separate, as in this case, he may take it from the administrators of the buyer.

We think the court was correct in holding that the Interstate Packing Company was the owner and entitled to the immediate possession of the merchandise, and that the acts of the defendants amounted to conversion of said property, and that the proceeds received by said defendants represent the property which belonged to the Interstate Packing Company, and that it is therefore entitled to the proceeds of said sale in lieu of being able to recover said property.

We do not deem it necessary to cite further authorities, because this court has repeatedly upheld contracts for conditional sale of property, and there can be no

question but that this was, under the express terms of the contract, a conditional sale, and that the property was kept separate, and the particular property purchased from the packing company and sold by the administrators was identified as the property sold under this contract, and we think that the circuit court correctly declared the law, and the judgment is affirmed.