McGraw v. Calhoun.

Opinion delivered April 1, 1929.

*Williamson & Williamson,* for appellant.

*R. W. Wilson, W. F. Norrell* and *A. J. Johnson,* for appellee.

McHANEY, J. On October 14, 1927, appellee, D. A. Calhoun, entered into a contract with F. G. Smart Motor Company of Pine Bluff, Arkansas, for the purchase of "one Ford type TT, model 1927, motor number 14383166" automobile and one Nabors trailer, for a total consideration, including insurance, accessories and repairs, of $322.60, of which $25 was paid cash, and for the remainder appellee executed eight promissory notes for $37.20 each, the first due November 15, 1927, and one due on the 15th of each month thereafter, up to and including June 15, 1928. Each of said notes recited that it was given in part payment of the balance due on one Ford automobile of the above number, and one Nabors trailer, and that the title to the said property should remain in the motor company until payment in full had been made, and that, if default is made in the payment of one, all should become due and payable. The sales contract, in addition to retaining title in the property and the provision with reference to default as set out in the notes, further provided that, "in any such event, seller, with the aid of any other person or persons, may take immediate possession of said motor vehicle, wherever it may be found, and purchaser does hereby waive any right of action whatsoever against seller, his agents or representatives,

growing out of the repossession or retention of said motor vehicle; and purchaser does hereby forfeit any and all payments made on said motor vehicle. Purchaser agrees that seller may sell said motor vehicle so retaken at public or private sale, with or without notice to purchaser, and with or without having said motor vehicle at the place of sale, upon such terms and in such manner as seller may determine * * *.'' It is further provided, ''until fully paid for, the use of said motor vehicle by the purchaser is at the will and sufferance of the seller, who, upon demand, shall be entitled to the possession of said motor vehicle.'' The agreement further provided that it and the notes constituted the entire contract between the parties, and that same could not be waived or modified unless written upon or attached to the contract.

Appellee defaulted in his payments due on the 15th days of February, March and April, 1928, and on the first day of May, after repeated demands had been made upon appellee to make his payments, the Smart Motor Company, through its agent at Star City, J. D. Coghill, the person who made the sale and executed the contract with appellee Calhoun, repossessed the property from appellee's son and agent, and immediately sold and delivered same to appellant for the balance due it under its contract with appellee, appellant holding a bill against the car in the sum of $393.77 for gasoline, oil, tires, repairs, and equipment. On May 2, after the above transaction had taken place, and with knowledge thereof, appellee Calhoun went to Pine Bluff and delivered a check to the Smart Motor Company in payment of the balance due on the car, and received from the bookkeeper, an order to Coghill to deliver the car to him. Coghill was unable to deliver the car, as he had already sold it to appellant, who had the possession of it, and appellant refused to surrender the possession. Thereupon appellee Calhoun stopped payment on his check given to the Smart Motor Company, and thereafter instituted this action in

replevin against appellant, the Smart Motor Company, and Cogbill. The case was tried before the court sitting as a jury, and the court found that, "under the terms of the contract, the defendant, J. D. Cogbill, had the right to repossess the truck and trailer at the time this was done. But he was acting only as the agent of the Smart Motor Company, and, in no event, could he then sell the truck at private sale to McGraw." The court further found that, upon payment of the balance due the next day, appellee was entitled to the immediate possession of the truck and trailer, and that $900 was a reasonable compensation to Calhoun as damages for the unlawful detention of the truck by appellant, which should be credited with the amount of appellant's bill, plus the $190 paid the Smart Motor Company, in the total sum of $583.77. The court further found the value of the car to be $600. Judgment was entered against appellant and the sureties on his retention bond for the car or its value of $600, and the additional sum of $316.23 for damages for detention of the car, over and above the amount of appellant's bill for supplies and the amount paid the Smart Motor Company. In other words, appellant found himself, at the conclusion of the lawsuit, with a judgment against him for $916.23, which might be reduced $600 by the delivery of the car to appellee.

We think the court correctly found that Cogbill rightfully repossessed the truck and trailer at the time it was repossessed, but that the court erred in its next finding that, "in no event, could he then sell the truck at private sale to McGraw."

As we have seen, the title to the property involved in this litigation was at all times in the F. G. Smart Motor Company. The terms of the contract plainly provide, both in the contract and in the notes, that, upon default in the payment of any of said notes, the remainder thereof shall immediately become due and payable at the election of the holder, and that immediate possession of the property may be had, and that the property may be

immediately resold at either public or private sale, with or without notice to the purchaser. The undisputed facts show that the property was repossessed and sold to appellant by an agent of the seller, who had authority to repossess the car, and ample authority to resell the same. Therefore, when the property was repossessed under the power contained in the sales agreement, the seller, through its authorized agent, Cogbill, had the power to resell same and convey an absolute title to the purchaser. The title at all times remained in the Smart Motor Company until the appellee had performed the condition set out in the contract, that of paying his notes in accordance with the terms thereof, and, having repossessed the car and sold it to appellant, after default, he acquired the legal title and the absolute right of possession. The appellee never acquired the legal title to the property. He only held the possession conditionally.

In *Home Fire Ins. Co.* v. *Wray*, 177 Ark. 455, 6 S. W. (2d) 546, we held that the vendor of chattels may deliver the possession thereof to the vendee on condition that title thereto shall remain in the vendor until the whole purchase price is paid, and that a subsequent purchaser of such chattels from the vendee, though without notice of such reservation, acquires no title as against the vendor, and that such reservation of title need not be in writing, but may rest wholly in parol.

In *Meyer* v. *Equitable Credit. Co.*, 174 Ark. 575, 297 S. W. 846, we held to the same effect; and many other cases might be cited along the same line; as, for instance, see *National Bank of Ark.* v. *Interstate Packing Co.*, 175 Ark. 341, 299 S. W. 34.

We think there can be no question as to Cogbill's authority to sell the car to appellant after he had repossessed it for the Smart Motor Company. He was the general agent of the Smart Motor Company in Star City. He personally had sold and delivered the property originally to the appellee, Calhoun, and himself signed the sales agreement for the Smart Motor Company. It

was in his line of business to sell motor cars, and to collect therefor, and it is significant that the Smart Motor Company is not questioning his authority to act for it in repossessing the car and selling it to appellant.

We held in *Passwater-Chevrolet Co.* v. *Whitten,* 178 Ark. 136, 9 S. W. (2d) 1057, that, after the property had been repossessed by the company and sold to another, the purchaser could not maintain replevin, as he had lost title to the car. We there said: "In order to maintain an action to recover the possession of personal property or to recover damages for the conversion of such property, plaintiff must show title in the property so wrongfully taken or converted." Citing the cases of *Security Bank & Trust Co.* v. *Bond,* 132 Ark. 592, 201 S. W. 820, and *Brown & Hackney* v. *Lovelace,* 152 Ark. 541, 239 S. W. 21. In that case appellees voluntarily surrendered the car and permitted same to be sold to an innocent purchaser, and we held that, by so doing, he lost whatever general or special ownership he had in the property, together with the right to the possession thereof. In this case, the facts are somewhat different regarding the repossession of the car, but the lower court has found, on conflicting evidence, that the car was rightfully repossessed, and its finding in this regard is as binding on this court as the verdict of a jury. Having rightfully repossessed the car, it had the absolute right to resell the same, which it did through its authorized agent to appellant, who thereby acquired the legal title and the right of possession.

It necessarily follows that appellee could not maintain replevin against appellant for the car, and that the judgment of the court awarding damages in favor of appellee and for possession of the car or its value was erroneous, and must be reversed. It appears that, on rendition of the judgment of the court, the appellant delivered the possession of the property to appellee, who has had the possession and use thereof since that time. The cause will be remanded, with directions to

enter a judgment in favor of appellant for the possession of the property, plus its usable value for the time it has been wrongfully held by appellee, in accordance with the rule announced in the recent case of *Ætna Ins. Co.* v. *Mills*, 176 Ark. 684, 3 S. W. (2d), p. 999, or its value, which the court found to be $600 at that time, with interest at 6 per cent.